# ROCK ISLAND PLOW COMPANY v. REARDON, TRUSTEE IN BANKRUPTCY OF BROWN.

## APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH CIRCUIT.

No. 98.   Submitted December 11, 1911.—Decided January 9, 1912.

A bankrupt, in Illinois, within a few days of filing a petition in voluntary bankruptcy, confessed judgments upon which executions were issued and returned unsatisfied but no actual levy was made; thereafter and before filing the petition he transferred goods in his possession to the vendor thereof, who claimed they had been delivered on conditional sales; the trustee began subrogation proceedings to preserve the liens of the judgments for the benefit of the estate, to which the judgment creditors assented, and also commenced proceedings to compel redelivery of the goods transferred on ground that lien of judgments inured to estate; the trustee had also claimed a right to recover the goods on the ground of unlawful preference; held, that

> Under the law of Illinois, delivery to the sheriff of the executions on the judgments operated without levy to create liens upon the property of the judgment debtor within the county.
>
> Such liens were paramount to rights in the property possessed by the vendor under contracts of conditional sale.
>
> The effect of the subrogation order was to render inoperative as a preference in favor of the judgment creditors the liens obtained through the executions and to preserve such liens as of the date of filing the petition for the benefit of the estate. *First National Bank* v. *Staake*, 202 U. S. 141.
>
> Liens of execution creditors, as they exist when a petition of involuntary bankruptcy is filed, cannot be subsequently destroyed by acts of the creditors to the prejudice of the estate.
>
> As the holder of the goods had not been prejudiced by the proceedings to recover for unlawful preference, the trustee was not barred from asserting the lien of the judgments on the same goods for the benefit of the estate.

168 Fed. Rep. 654, affirmed.

WHETHER the Plow Company or Reardon, as trustee of the bankrupt estate of Frank Brown, has the better right to certain personal property delivered by Brown to the Plow Company is the question to be decided on this record.

The facts pertinent to the controversy are these: Brown was a merchant and engaged in business at Pekin, Tazewell County, Illinois. On November 13, 1907, he confessed judgment for $247.15 and $400 and costs in favor of a creditor, the Peoria Cordage Company, a corporation, and on the same day an execution was issued, which was received and endorsed by the sheriff of Tazewell County on the following day. On November 23, 1907, Brown confessed judgment in favor of another creditor, the D. M. Sechler Carriage Company, a corporation, for the sum of $282.25 and $400, with costs, and on the same day execution issued, and on the next day was received and endorsed by the sheriff of Tazewell County. While these executions were outstanding and unsatisfied, Brown, on November 25, 1907, delivered merchandise, consisting of gang plows, cultivators and other farm implements of the value of $500, to the Rock Island Company, appellant, and as the result of the transaction an indebtedness of Brown to the Plow Company of $406 was extinguished. When the goods were delivered to the Plow Company Brown was insolvent and the Plow Company had reason to believe that such was the fact. Two days after the delivery of the property to the Plow Company Brown filed a petition in voluntary bankruptcy, and Reardon was subsequently qualified as trustee of the bankrupt estate.

Seeking to avail of the provisions of § 67, paragraphs *c* and *f* of the Bankruptcy Act, the trustee, on January 21, 1908, filed with the referee a petition setting forth the obtaining of the judgments by the Sechler and Cordage companies heretofore referred to, that the executions issued on those judgments were liens from the date of receipt by the sheriff on all the real and personal prop-

erty of the bankrupt located in Tazewell County, Illinois, and continued to be liens down to the date of the filing of the petition in bankruptcy, and prayed that the liens of said executions might be declared null and void as to the Sechler and Cordage companies, but might be preserved for the benefit of the estate in bankruptcy. The creditors just named entered their appearance and consented that the prayer of the petition be granted, and an order was entered on the date when the petition was filed granting the relief sought.

Three days after the entry of the subrogation order the trustee commenced this litigation by filing a bill of complaint on the chancery side of the District Court of the United States, Southern District of Illinois, Northern Division—the same court in which the bankruptcy proceedings were pending. The petition assailed the transfer and delivery of property by Brown to the Plow Company on November 25, 1907, heretofore referred to, as an unlawful preference. The court was asked to decree a surrender of the property to the trustee or payment of its value. On March 27, 1908, the Plow Company filed its plea, and therein in substance contended that the assailed transaction was not an unlawful preference. It averred that it had previously delivered the property to Brown, under and by virtue of the terms of certain written contracts, annexed as exhibits to the plea; that the title of such property "always was and remained in" the Plow Company; and, that it "lawfully took and repossessed itself" of the property by reason of the failure of Brown to pay for the same according to the contracts. Shortly after, the trustee, by leave, filed an amendment to his bill of complaint. The amendment consisted in detailing the facts as to the obtaining of the judgments of the Sechler and Cordage companies heretofore referred to, and an issue of executions on the judgments prior to the transfer of Brown to the Plow Company, and that the executions

were outstanding at the time of the filing of the petition in bankruptcy. The proceedings before the referee culminated in the order preserving the liens of the judgments for the benefit of the bankrupt estate were next set forth, and it was claimed that the liens thereby preserved were superior to any claim which the Plow Company had to the goods in controversy. In a plea to the amended bill the Plow Company reiterated the facts upon which it based the claim that in receiving the goods from Brown it merely took possession of its own property and had not obtained an unlawful preference. It further sets forth that when it received the goods no levy had been made under either of the executions issued upon the judgments obtained by the Sechler and Cordage companies, and that in consequence it had the superior right to the goods. Want of notice of the subrogation proceedings and the consequent invalidity of the order of subrogation was also averred. It was in addition averred that the judgment in favor of the Cordage Company was not a valid lien on January 21, 1908, the date when the order of subrogation was made, because prior thereto the execution had been returned to the sheriff and filed and docketed in the court which had issued the same. Furthermore, it was averred that the execution on the Sechler judgment had been returned by the sheriff with an endorsement, "no property found," and was filed on February 22, 1908, in the court from which it had issued, and that rights based upon the issue of such execution could not be originated thereafter, viz., on April 16, 1908, when the amended bill was filed.

The cause was heard upon the sufficiency of the plea just reviewed, and the plea was held sufficient. The trustee elected not to file a reply to the plea, and a decree was thereupon entered dismissing the bill. On appeal the decree of dismissal was reversed by the Circuit Court of Appeals (168 Fed. Rep. 654), and this appeal was then taken.

*Mr. W. H. Sholes*, with whom *Mr. Walter H. Kirk* was
on the brief, for appellant:

The contracts under which the goods were delivered
to the bankrupt contain a condition that the "right to the
possession of all goods shall remain and inure to the Plow
Company, with the effect that it may hold or retake and
subject the same as security (in the manner described by
law for the subjection of chattels and foreclosure of chattel
leases of like nature) to the indebtedness hereby con-
tracted until full payment shall have been made by pur-
chaser."

The character of the transaction is fixed at its inception
and nothing short of a new agreement between the parties
can alter the original nature of the contract. Where it ap-
pears from the circumstances of the case that the parties
intended a sale to be conditional, although no condition
has been expressed, a condition to be attached to the
sale may be implied. Story on Sales, § 253; 6 Am. & Eng.
Enc. Law (2d ed.), 439; *Harkness* v. *Russell*, 118 U. S.
663.

The right to possession was recognized by the parties
to said contracts as equivalent to the retention of title.
No fraud can be attached or urged to the making of said
contracts. The right to possession by the Plow Company
existed on the dates of making of said contracts but was
only exercised on November 25, 1907, before the rights of
third parties had intervened.

These contracts cannot be construed otherwise than
as contracts of conditional sale, and the validity of such
contracts is well recogniz    by the courts of Illinois.
*Emerson Piano Co.* v. *Maund*, 85 Ill. App. 453; *Kimball
Co.* v. *Cruikshank*, 123 Ill. App. 581; *O'Neil* v. *Rogers*, 110
Ill. App. 662.

The trustee in bankruptcy stands in the shoes of the
bankrupt himself and takes no better title than the bank-
rupt had as of the date of adjudication. He does not take

the estate of the bankrupt as an innocent purchaser or a third person, but takes subject to all valid liens, claims and demands outstanding against the bankrupt. *Thompson* v. *Fairbanks*, 196 U. S. 516; *Hardin* v. *Osborne*, 94 Illinois, 571; *Burgett* v. *Paxton*, 99 Illinois, 288; *O'Hara* v. *Jones*, 46 Illinois, 288; *Matter of Bates, Assignee*, 118 Illinois, 524; *Field* v. *Ridgely*, 116 Illinois, 424; *Union Trust Co.* v. *Trumbull*, 137 Illinois, 146.

In other words, the trustee, to prevail in this cause, must find some creditor of the bankrupt who had a better right to the Plow Company's goods in the hands of the bankrupt on the day the Plow Company took them from the bankrupt, than the Plow Company itself had, and must, if at all, succeed in his contentions, here, by being subrogated to that creditor's rights for the benefit of the entire bankrupt estate. If there was no such creditor, or if that creditor's rights have been lost by laches or limitations, the trustee cannot now prevail. The statutory or judicially determined rules of property of Illinois control and determine the validity of such liens, if any, as the Cordage Company and the Carriage Company obtained by their judgments and executions. Collier on Bankruptcy (6th ed.), 553; *Humphrey* v. *Tatman*, 198 U. S. 91; *In re First Nat'l Bank*, 135 Fed. Rep. 62; *In re Greene*, 134 Fed. Rep. 137.

Under the laws and judicially determined rules of property in Illinois, the liens of the Cordage Company and Carriage Company executions which had not been perfected and made absolute and effective by levy, were, on November 25, 1907, defeated and lost in consequence of the repossession of its goods then in the possession of the bankrupt, by the Plow Company under the said conditional sale contracts, and thereafter neither the sheriff nor the trustee had the right to follow and take the same away from the Plow Company. *People* v. *Johnson*, 4 Brad. (Ill. App.) 346; *Peters* v. *McConnell*, 16 Ill. App. 526;

*Travers* v. *Cook,* 42 Ill. App. 580 (582); *Minor* v. *Herriford,* 25 Illinois, 344; *Davidson* v. *Waldron,* 31 Illinois, 120; *Chittenden* v. *Rogers,* 42 Illinois, 100; *Mulheisen* v. *Lane,* 82 Illinois, 117. See also *Davidson* v. *Waldron,* 31 Illinois, 120; *Powers* v. *Wheeler,* 63 Illinois, 29; *In re J. B. Hopkins,* 1 Am. Bk. Rep. 209.

*Mr. Franklin L. Velde,* with whom *Mr. Ira J. Covey* was on the brief, for appellee:

The contracts under which the appellants claim to have taken possession of the goods in question were fraudulent and void as to the appellee acting as trustee in bankruptcy.

The contracts in question were not conditional sale contracts as they did not contain any provision retaining title in the seller.

Treated as conditional sale contracts, they furnished no defense to the rights of the appellee as trustee who was vested with the rights of execution creditors under the subrogation order of the district court.

Where goods are sold to the bankrupt upon credit, and upon the understanding that the title to such of them as should not be sold by him should remain in the vendor until payment of the purchase price or that the goods or the proceeds should be held by the purchaser as security the purchaser being in actual possession, the transaction cannot be upheld as a conditional sale, and is a fraud upon the creditors of the vendee. The title to the goods vests absolutely in the buyer and passes to his trustee in bankruptcy under § 70a. *In re Garcewich,* 8 Am. Bk. Rep. 149; 115 Fed. Rep. 87; *Pontiac Buggy Co.* v. *Skinner,* 158 Fed. Rep. 858; *Robinson* v. *Elliott,* 22 Wall. 513; *In re Rodgers,* 125 Fed. Rep. 169; *In re Carpenter,* 125 Fed. Rep. 831; *Security Warehouse Co.* v. *Hand,* 206 U. S. 415; *In re Antigo Screen Door Co.,* 123 Fed. Rep. 249; *In re Rasmussen,* 136 Fed. Rep. 704; *In re Gault,* 120 Fed. Rep. 443; *Skilton* v. *Codington,* 185 N. Y. 80; *In re Perkins,*

155 Fed. Rep. 237; *In re George Hassam,* 153 Fed. Rep. 932; *Union Trust Co. v. Trumbell,* 137 Illinois, 146; *Deering Shoe Co.* v. *Washburn,* 141 Illinois, 153; *In re Tucker,* 161 Fed. Rep. 584; *Mitchell* v. *Mitchell,* 147 Fed. Rep. 280.

The agreements in this case are peculiar. They do not contain the usual provisions of contracts of this kind that the title to the goods shall remain in the vendor until they are paid for. The most that can be said of these contracts is that they give to the vendor a sort of chattel mortgage lien.

The trustee stands in the position of an execution creditor. Section 67, pars. *c* and *f* of the Bankruptcy Act of 1898; *First National Bank* v. *Staake, Trustee,* 202 U. S. 141; *In re N. Y. Economical Printing Co.,* 110 Fed. Rep. 514; *In re Merrow,* 131 Fed. Rep. 993.

The only controversy here possible concerning the rights arising thereunder is between the attaching creditor and the trustee. As both these parties are agreed that the latter shall be subrogated to the rights of the former, the judgment of the referee is affirmed. See *In re N. Y. Printing Co.,* 6 Am. Bk. Rep. 615; 110 Fed. Rep. 514; 49 C. C. A. 133.

Under the law of Illinois these goods which the Plow Company received from the bankrupt two days before the petition was filed and while both of these executions were in the hands of the sheriff, could have been levied upon by him. *Peoria Mfg. Co.* v. *Lyons,* 153 Illinois, 427; Chattel Mortgage Act, 2 Starr & Curtiss, 2743; *St. Louis Iron Works* v. *Kimball,* 53 Ill. App. 636.

If the goods could have been levied upon by the sheriff under these executions, then the trustee in bankruptcy representing now, as he does, these execution creditors, has the right to the goods in question. *In re Antigo Screen Door Co.,* 123 Fed. Rep. 249; Collier on Bankruptcy (6th ed.), 588; see also *Gilbert* v. *National Cash Register Co.,* 176 Illinois, 288, and cases cited.

MR. CHIEF JUSTICE WHITE, after making the foregoing statement, delivered the opinion of the court.

The only question arising for decision is whether the facts set up in the plea of the Plow Company are sufficient to exempt that company from accountability to the trustee for receiving a preference within the terms of the Bankruptcy Act. The consideration which this question received in the opinion delivered by the Circuit Court of Appeals makes unnecessary any elaborate review of the subject.

We assume, for the sake of argument, as did the Circuit Court of Appeals, that the contracts by virtue of which the Plow Company claimed it re-took possession of the property in question were conditional sale contracts, whereby the Plow Company retained in itself the title and right of possession of its goods until paid for by Brown, and that by virtue of such contracts the taking or re-taking of the property in question was valid as between the Plow Company and the bankrupt. The inquiry then is whether the contracts and the possession taken thereunder of the property in controversy by the Plow Company are operative to bar the rights asserted by the trustee in and by force of the subrogation proceedings. The claim of the trustee was in substance, 1, that delivery to the sheriff of executions upon the Sechler and Cordage judgments operated without levy to create liens upon the real and personal property of Brown the judgment debtor within the county; 2, that such liens were paramount to rights in the property possessed by a vendor under a contract of conditional sale; and, 3, that the effect of the subrogation order was to render inoperative as a preference the liens obtained by the judgment creditors through their executions, and to preserve such liens as of the date of the filing of the proceedings in voluntary bankruptcy for the benefit of the estate in bankruptcy.

That the Circuit Court of Appeals rightly held the affirmative of these three propositions we entertain no doubt. Upon the first two propositions that court said (p. 658):

"As the law of Illinois must govern the answer to both questions, and the rule there is well settled, as we believe, for an affirmative answer to each, no difficulty appears in the solution. Paragraph 9 of chapter 77, Rev. St. Ill., 1874 (2 Starr & C. Ann. St., 1896, p. 2336) provides: 'No execution shall bind the goods and chattels of the person against whom it is issued, until it is delivered to the sheriff or other proper officer to be executed.' This is a modification of the rule at common law which created a lien from the issuance of the writ, and its effect to create a lien in favor of the execution creditor is recognized in numerous decisions noted in Starr & C. Ann. St., supra. See *Frink* v. *Pratt & Co.*, 130 Illinois, 327, 331, one of the citations in appellee's brief. The cases cited contra, declaratory of the rule that an officer receiving the execution has 'no interest in the property itself' to maintain an action therefor 'until after a levy,' do not touch the present inquiry of lien in favor of the execution creditor, and are plainly inapplicable. Upon the second question, it is stated in *Gilbert* v. *Nat. Cash Register Co.*, 176 Illinois, 288, 296, that 'whatever may be the rule in other jurisdictions,' this rule is established in Illinois: 'If a person agrees to sell to another a chattel on condition that the price shall be paid within a certain time, retaining the title in himself in the meantime, and delivers the chattel to the vendee so as to clothe him with an apparent ownership, a *bona fide* purchaser or execution creditor of the latter is entitled to protection as against the claim of the original vendor.' The authorities there cited for such rule are deemed sufficient reference; and we remark that no departure appears from the doctrine thus stated in any of the Illinois cases called to our attention."

It is significant that in the argument at bar counsel for the Plow Company make no attempt to point out wherein the authorities cited by the court are not applicable and authoritative on the propositions which they were cited as supporting, and indeed entirely omit any reference to them.

The decision in *First National Bank* v. *Staake,* 202 U. S. 141, 146, is authoritative upon the last proposition. As the executions issued upon the judgments, which executions were held by the sheriff for levy, operated to create liens upon the property in question, then in the possession of Brown although held under conditional sale contracts, and such liens were paramount to the rights of the vendor, the Plow Company, it is manifest that the right of the judgment creditors to resort to such property in satisfaction of their liens could not be destroyed by a mere transfer of possession from one party to the contract to the other party thereto. It also follows in reason, we think, that the liens of the execution creditors in the property as they existed when the petition in involuntary bankruptcy was filed could not be subsequently destroyed by the acts of the creditors, the third parties, to the prejudice of the estate, and that if the rights of the bankrupt estate could be lost by the laches of the trustee, the record presents no evidence of such laches. The circumstance that the trustee, in ignorance perhaps of the existence of the conditional sale contracts, first based the right to relief solely upon the claim that an unlawful preference was created through the payment by means of the transfer made by Brown, when insolvent, of an indebtedness to the Plow Company, did not operate to the prejudice of the Plow Company and was plainly insufficient to bar the trustee from asserting an additional right to the relief prayed, viz., the right growing out of the subrogation order made prior to the commencement of the litigation.

*Decree affirmed.*