## In re HARRINGTON et al.

(District Court, D. Massachusetts. January 3, 1914.)

No. 19,018.

1. BANKRUPTCY (§ 140*)—OWNERSHIP OF PROPERTY—CONDITIONAL SALES.

A written agreement between an automobile manufacturer and a dealer, gave the dealer the sale of the manufacturer's automobiles in specified territory, and provided for sales to the dealer at specified discounts, that the dealer on orders for parts should be allowed a specified discount from list prices; that title to all automobiles and parts should not pass to the dealer until fully paid for; that the dealer had made a deposit which would be repaid when all cars contracted for were paid for, except that at the manufacturer's option it might be credited against any parts or open accounts; that the dealer would keep a repository and repair station for satisfactory display, care, and repair of such automobiles; that the deposit might be retained by the manufacturer as liquidated damages for breach of the contract; and that the manufacturer should not be liable to the dealer for any loss or damage to automobiles or other goods while in transit. Both parties understood that the dealer might sell and dispose of parts, and there was no reservation by the manufacturer of a right to the proceeds of such sales, no provision as to insurance or prohibition against mingling the parts with other goods or the proceeds with other money of the dealer. Held, that the actual agreement between the parties was to be gathered from the complete understanding from which it appeared that there was a sale of the parts, and that the reservation of title was merely colorable, and intended only to safeguard the rights of the manufacturer in case the dealer should fail, and hence it was void as to the dealer's trustee in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199, 219, 225; Dec. Dig. § 140.*]

2. SALES (§ 477*)—CONDITIONAL SALES—WAIVER OF CONDITION.

A provision in a contract between a manufacturer of automobiles and a dealer, retaining title to automobile parts furnished the dealer for sale, if valid and effective when made, was waived by a letter written the dealer, recognizing his right to resell without separating and reserving the funds received from such sales.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1411–1417; Dec. Dig. § 477.*]

In Bankruptcy. In the matter of John S. Harrington and others, bankrupts. On petition to review an order of the referee dismissing a petition of the Flanders Motor Company. Order affirmed.

Carver & Carver, of Boston, Mass., for petitioners.
George W. Reed, of Boston, trustee, pro se.

MORTON, District Judge. This is a petition to review an order entered by the referee dismissing a petition of the Flanders Motor Company of Detroit, Mich., as the successor of the Metzger Motor Car Company, for reclamation of certain automobile parts now in the possession of the trustee. The case was submitted on a short written statement of agreed facts, a further written statement of agreed facts, and certain documentary evidence therein referred to, including the contract in question and a letter from the claimant, and upon no other facts or evidence.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The property in dispute consists of a great number of parts of automobiles for use in "Everitt" cars. At the time of the bankruptcy they were in the possession of the bankrupts, commingled with other goods. They have since been separated by the trustee, and are held by him subject to these proceedings. The date of the bankruptcy was January 10, 1913. It is the contention of the claimant that the bankrupts did not own the parts in question, and that said parts had been delivered under a written agreement, by the terms of which the legal title remained in the claimant. The trustee contends that the sales to the bankrupts were absolute, and that the property in question is part of the bankrupt's estate.

[1] The written agreement on which the claimant relies is, in substance, as follows: It was made on June 28, 1911, at Detroit, Mich., between the Metzger Company and the bankrupts. By the first clause the company (or "manufacturer") granted to the bankrupts (called the "dealer") the sale of Everitt automobiles in all of the New England States except Connecticut, and agreed to sell said automobiles to the dealer at certain specified discounts from the catalogue prices. "The above prices are all f. o. b. at factory, Detroit, Mich." The fifth clause of the contract provides:

"The dealer shall, on orders for parts, be allowed 30% discount from the last list prices established by the manufacturer."

The ninth clause provides:

"It is expressly understood and agreed that the title to each and every automobile and to all automobile parts furnished to said dealer, under the terms of this agreement, shall not pass to the dealer until same is fully paid for in full and cash."

The twelfth clause provides that the dealer agrees to take not less than 500 cars "of the types and on the dates as hereinafter indicated." So little, however, seems to have been thought of this provision that, although the months are stated, from July, 1911, to June, 1912, both dates inclusive, no numbers or totals were carried out. The agreement recites that the dealer has deposited with the manufacturer the sum of $3,000 to apply as a deposit on the cars ordered as above, and that:

"Said sum will be credited by the manufacturer to the dealer, and will be repaid when all the cars contracted for are delivered and paid for, except that any part or all of said deposit may, at the option of the manufacturer, be credited against any parts or open account due the manufacturer from the dealer."

The dealer agrees inter alia to maintain the manufacturer's list prices, to keep a repository and repair station for satisfactory display, care, and repair of such automobiles, and that the deposit may be retained by the manufacturer as liquidated damages for the dealer's breach of the contract.

The contract expired by its own limitation on July 1, 1912, but it provided that:

"All orders accepted by the manufacturer and all sales made by the dealer after such termination of this contract shall be governed by the terms and conditions thereof."

It was further provided that the manufacturer should not be liable to the dealer for any loss or damage to automobiles or other goods while in transit.

The parts of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]) by which the rights of the parties are to be determined are as follows:

"Claims which for want of record or for other reasons would not have been valid liens as against the claims of the creditors of the bankrupt shall not be liens against his estate." Section 67a.

"Property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him." Section 70a (5).

"And such trustees, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon." Section 47a (2) (Added by Act June 25, 1910, c. 412, § 8, 36 Stat. 840 [U. S. Comp. St. Supp. 1911, p. 1501]).

The rights of the parties depend upon the real and complete agreement between the claimant's predecessor and the bankrupts. The court is not limited to the mere language of the written instrument; it may examine all facts concerning the matter, and determine whether the written contract was made in good faith, or was merely colorable, and, if made in good faith, whether its provisions for the retention of title were waived by the vendor.

It is apparent that neither the claimant nor the dealer understood or believed, either at the time when the written contract was made or subsequently, that its terms were to be lived up to. Its stringent provisions in regard to the retention of title were inserted, not for the purpose of everyday business, but only in an effort to safeguard the rights of the vendor in case the dealer should fail. The parties plainly contemplated that the parts in question were to be taken and kept by the bankrupts in order that they might be promptly accessible for repairs upon Everitt automobiles in the dealer's territory, and that, as such parts should be needed for repairs, the bankrupts should sell and deliver them to the persons upon whose automobiles the parts were used.

It is absurd to suppose that the claimant can now replevy, from the various persons whose Everitt cars were repaired by the bankrupts, the parts used in such repairs, although by the literal terms of the contract of June 28, 1911, the claimant would have that right. Both parties to the contract understood that it did not mean what it said, and that the dealer did have the right to sell and dispose of parts in the ordinary course of business. It is to be observed that the vendor made no reservation of its right to the proceeds of such sales, no provision as to insurance upon the parts, no prohibition against mingling the parts with other goods, or the proceeds of the sales with other money of the dealer. The actual agreement between the claimant and the bankrupts is to be gathered, not from a single clause of the written contract, but from the complete understanding between the parties. The formal reservation of title in the written instrument is contradicted and nullified by the unwritten parts of the agreement, and the written contract is pro tanto merely colorable.

[2] Even if the agreement of June 28, 1911, be regarded as valid and effective at the time when it was made, its provisions as to the retention of title were not insisted upon by the vendor, and were waived, as is plainly indicated by the letter of October 31, 1912, contained in the agreed statement of facts, in which the right of the bankrupts to resell, without separating and reserving the funds received from such sales, is plainly and fully recognized.

The case is of course to be determined according to the law of Massachusetts, under which special interests in personal property are strongly protected. At the same time it seems to me that—

"the real purpose and understanding [of the parties to the contract] were to make an effectual sale, and that the writing, even if interpreted to withhold the title by its terms, was merely a convenient resort to provide the right to take the goods in event of disaster overtaking the [Harrington] concern." Day, J., in Ludvigh, Trustee, v. American Woolen Co., 231 U. S. 522, 34 Sup. Ct. 161, 58 L. Ed. —, December 15, 1913.

Several of the most important factors which were relied upon by the Supreme Court in the Ludvigh Case as indicating good faith and the validity of the agreement there in question are entirely absent in this case.

Order of referee affirmed.