# WOODS v. STEMPLE.

## In re NASH.

(Circuit Court of Appeals, Fourth Circuit. April 10, 1923.)

No. 2018.

1. **Bankruptcy** �köö184(2)—**Mining lease not void as to creditors, though not recorded.**

An unrecorded mining lease was not void as to creditors and purchasers, under Code W. Va. c. 74, § 3 (sec. 3831), and payment of royalties made within the four months of bankruptcy and with knowledge on the part of lessor° of lessee's insolvency is not recoverable by the trustee for the benefit of the estate; such statute applying only to lien or judgment creditors.

2. **Execution** �köö111—**Lien extends only to personal property owned at time execution placed in hands of sheriff.**

Under Code W. Va. c. 141, § 2 (sec. 5124), the lien of an execution extends only to personal property owned by the judgment debtor in the

⊨⊳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

county at the time the execution is placed in the hands of the sheriff, or acquired by the debtor on or before the return day thereof.

Appeal from the District Court of the United States for the Northern District of West Virginia, at Elkins; William E. Baker, Judge.

In the matter of the estate of A. J. Nash, bankrupt, D. D. Stemple, trustee. From a decree in favor of trustee under a petition assailing a certain fund as a preference, Jennie Cantor Woods, executrix of the estate of J. Hop Woods, deceased, appeals. Reversed.

Harry H. Byrer, of Martinsburg, W. Va., for appellant.
W. Bruce Talbott, of Philippi, W. Va., for appellee.

Before WOODS and WADDILL, Circuit Judges, and GRONER, District Judge.

GRONER, District Judge. A. J. Nash was adjudicated a voluntary bankrupt on May 31, 1919, and thereafter D. D. Stemple was duly appointed and qualified as trustee. Some time later the trustee filed a petition with the referee, assailing as a preference the sum of $962.90 in the hands of J. Hop Woods, now deceased, whose executrix, Jennie Cantor Woods, prosecutes this appeal. The referee, after hearing, decided in favor of the trustee, and on review to the District Court the decision of the referee was affirmed. The facts are as follows:

On February 12, 1919, Woods and Nash entered into an agreement in writing, never recorded, the purpose of which was to enable the latter to operate for his own account, and for a limited period, a certain coal mine belonging to the former, near Philippi, W. Va., paying for this privilege a certain amount for each ton of coal mined and agreeing, in addition, to pay out of the proceeds an ascertained price for certain personal property and equipment. There was a supplement to the contract, apparently made on the same day, in which it was agreed that the coal expected to be mined was to continue the property of Woods until certain debts due Woods by Nash were paid. Nash entered into possession, mined some of the coal, delivered the same to the Standard Oil Company and, on March 17th following, directed the oil company to pay the amount then due him to Woods. This was done, and the $962.90, being the amount thus received by Woods, is the subject of this controversy.

[1] The position of the trustee is that the contract between Woods and Nash, not having been recorded, is, under the provisions of section 3 of chapter 74 (sec. 3831) of the Code of West Virginia, void as to creditors and purchasers, and hence as to the trustee in bankruptcy, and that the payment thereunder, having been made within the four months period, and with knowledge on the part of Woods of Nash's insolvency, is recoverable by the trustee for the benefit of the estate. Much is said in the briefs of counsel as to whether the contract in question is a lease or a license; but in the view we take of the law it is unnecessary to decide this question. Conceding that the contract was a lease, and that title to the coal mined thereunder passed to the lessee, we think it perfectly clear that the contract (al-

though unrecorded) was valid and enforceable as between the parties, and if this be conceded then it follows, we think, that it was equally good as against the trustee in bankruptcy so far as it was actually executed prior to his appointment, unless there is something in the statutes of West Virginia which makes a contrary rule apply. Holt v. Crucible Steel, 224 U. S. 262, 32 Sup. Ct. 414, 56 L. Ed. 756; Rock Island Co. v. Reardon, 222 U. S. 354-363, 32 Sup. Ct. 164, 56 L. Ed. 231.

"When a state recording statute, as construed by the state court, only provides for protection against unrecorded instruments of 'lien creditors' or 'creditors who have fastened a lien on the property,' or 'creditors armed with judicial process,' or the like, it has been held that the trustee cannot recover the property when the holder of an unrecorded mortgage or other instrument requiring record acquires possession before the filing of the petition in bankruptcy. This holding is on the express ground that the rights of no creditors had attached to any of the property until the petition was filed; that the trustee did not until then acquire the right of a lien creditor, and therefore could not recover property which had bona fide passed from the possession and ownership of the bankrupt before the petition was filed." Industrial Finance Corp. v. Capplemann, Trustee (C. C. A.) 284 Fed. 8.

In this case the record shows clearly that the contract, in so far as the payment to Woods is concerned, had been complied with prior to the bankruptcy, and the money provided therein to be paid actually paid and in the possession of Woods. Under these circumstances the rule above stated will apply unless, as already stated, there is something in the West Virginia statutes providing protection to simple contract creditors, and this we think is not the case. Although we are not pointed to any decision of the Supreme Court of West Virginia construing the term "creditors" as used in section 3 of chapter 74 of the Code of that state as limited to judgment or lien creditors, the decisions of the Supreme Court of West Virginia construing other similar provisions of the chapter in question indicate irresistibly that the language used in section 3 applies only to lien or judgment creditors. Birch River Co. v. Glendon, 71 W. Va. 507, 76 C. C. A. 972; In re Parsons (D. C.) 218 Fed. 674; Davis v. Hanover Society, 210 Fed. 768, 127 C. C. A. 318; McCandlish v. Keen, 13 Grat. (Va.) 615.

[2] It is, however, insisted on behalf of the trustee that since, admittedly, there was in existence at the time of the payment of the money an old judgment against the bankrupt in favor of one Floyd English, dated December 5, 1916, for $9, the trustee was subrogated to this creditor's rights for the benefit of the entire bankrupt estate. Granting, for the sake of argument, that the judgment in favor of English was docketed, as required by chapter 141 (secs. 5123–5139) of the Code of West Virginia, the lien of the fi. fa. under the provisions of section 2 of the same chapter, extends only to the personal property owned by the judgment debtor in the county at the time the execution was placed in the hands of the sheriff, or acquired by the debtor on or before the return day thereof. Inasmuch as the West Virginia law requires the fi. fa. to be returnable within 90 days, and inasmuch as there is nothing in the record to show that any new execution was ever issued on this judgment, it follows, conclusively we think, that at the time of the payment of the money in

question the lien of this execution could not attach to this specific property, and hence could not afterwards be revived by the trustee to affect that which had already been accomplished. In other words, English, as holder of the judgment at the time•of the payment by the oil company to Woods, had no better right to the money thus paid than any other creditor. That he might have had such rights by the issuance of a new execution does not affect the question. If they were lost by laches or limitations, neither he nor the trustee can complain.

For the reasons stated, we are of opinion that the decree of the lower court should be and the same is reversed.