### REED et al. v. FEDERAL FINANCE CORPORATION.

### In re MASSACHUSETTS MOTORS CO.

(District Court, D. Massachusetts. July 27, 1923.)

No. 1716.

I. Bankruptcy ⊜166(4)—Additional security taken within four months held voidable preference.

Defendant lent money to bankrupt with which to pay for motor cars, taking a document by which title to each car was to remain in defendant until the note given for such car was paid. The practice was for bankrupt, when it sold a car, to pay the note covering such car. Defendant learned that bankrupt had sold cars on which it owed $11,000, and had not paid the notes. It then took security therefor on other property. Bankrupt was then insolvent and within four months became bankrupt. *Held,* that the giving of the additional security constituted a voidable preference; the facts putting defendant on inquiry.

2. Bankruptcy ⊜140(1)—Contracts of conditional sale of motor cars held invalid against creditors.

Contracts of conditional sale of motor cars, though recorded, *held* invalid against creditors in bankruptcy of the buyer, where the cars were left in its possession with power to sell them, and without anything to indicate that it was not the owner.

In Equity. Suit by George W. Reed and others, trustees in bankruptcy of the Massachusetts Motors Company, against the Federal Finance Corporation. Decree for complainants.

George W. Reed, of Boston, Mass., for plaintiffs.

Edward A. Counihan, Jr., of Boston, Mass., for defendant.

LOWELL, District Judge. Bill in equity brought by the trustee in bankruptcy of the Massachusetts Motors Company to recover certain payments and transfers which were alleged to be preferences. The bankrupt was engaged in the business of selling motor cars. It borrowed money of the defendant under the following circumstances:

Cars were shipped from the factory to Boston, and a sight draft was drawn on the bankrupt and sent with the bill of lading for the cars to the Back Bay National Bank. The bankrupt on receiving notice of the shipment went to the defendant and borrowed money of it sufficient to pay the draft. It made out to the defendant a check for 20 per cent. of the amount to be borrowed. The defendant then paid the total amount to the Back Bay National Bank, which delivered the bill of lading to the bankrupt, and the cars were taken from the railroad and brought to the bankrupt's place of business. As security for the loan made by the defendant, an instrument was drawn which provided that the title to the automobiles should remain in the defendant until the notes secured by the automobiles were paid. All these documents were recorded in Boston. The defendant began to do business with the bankrupt in April, 1920, and continued to issue new loans on similar security until the latter part of July, 1920. The practice was that as soon as a car which was covered by the agreement was sold the bankrupt would

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

at once pay to the defendant the amount of the note secured by that car.

Toward the end of July it came to the knowledge of the defendant that the bankrupt had sold six or seven cars and had not paid the notes which were secured by the cars. The amount which the bankrupt had thus received and not paid over to the defendant was about $11,000. One of the officers of the defendant went to the bankrupt and protested. The bankrupt was unable to pay to the defendant $11,000, but on August 4th gave to him a document similar to the other documents which were used between the parties, secured by about 23 secondhand cars which the defendant had in its possession. Payments were received from sales made of automobiles covered by this document as follows: August 16, $540; August 17, $589.05; August 25, $360. There was evidence that the bankrupt was insolvent in July.

Toward the end of August the defendant learned that other finance corporations which had similar contracts with the bankrupt were taking possession of the cars which had been left with the bankrupt. The defendant thereupon took possession of several cars which were covered by the agreements between the parties. These cars were subsequently sold for $27,260. Shortly thereafter a petition in bankruptcy was filed against the Massachusetts Motors Company, and a receiver was appointed. After that the present plaintiffs were appointed trustees.

[1] The plaintiff alleges that the giving of security on August 4th for the payment of about $11,000 which was due to the defendant was a preference, and that the three payments in August on account of the sale of cars which were part of the security was also a preference.

I find and rule that when the defendant received in August the three payments on account of a past debt it received a greater percentage of its debt than other creditors of the same class, and that it had reasonable cause to believe that a preference would be effected.

Under the terms of the arrangement between the parties the bankrupt was to pay to the defendant the amount of its loan on any car as soon as it was sold. The fact that the bankrupt had sold cars and had not paid to the defendant loans to the amount of $11,000 put the defendant on its inquiry (Watchmaker v. Barnes, 259 Fed. 783, 170 C. C. A. 583), and if it had inquired it would have discovered that the bankrupt was insolvent at that time.

[2] The plaintiff also alleges that the taking possession of the cars at the end of August constituted a preference, as the bankrupt allowed this to be done. The answer to this contention depends on the legal effect of the documents which the parties executed. These documents provided that the title to the cars covered by them should remain in the defendant until the loans on the cars were paid. The cars were to be sold by the bankrupt, and there was nothing to show that they did not belong to it. The documents were recorded in Boston.

I rule that under these circumstances, in spite of their being recorded, the trustee in bankruptcy has a title superior to that of the defendant. 1 Black, Bankruptcy (3d Ed.) § 316; Williston, Sales of Goods, § 329; Rock Island Plow Co. v. Reardon, 222 U. S. 354, 32 Sup. Ct.

164, 56 L. Ed. 231; In re Garcewich, 115 Fed. 87, 53 C. C. A. 510; In re Harrington (D. C.) 212 Fed. 542; Flanders Motor Co. v. Reed, 220 Fed. 642, 136 C. C. A. 250; In re Hallbauer (D. C.) 275 Fed. 126; Industrial Finance Corp. v. Capplemann (C. C. A.) 284 Fed. 8; Spooner v. Cummings, 151 Mass. 313, 23 N. E. 839; Guaranty Security Corp. v. Eastern S. S. Co., 241 Mass. 120, 134 N. E. 364; Boice v. Finance & Guaranty Corp., 127 Va. 563, 102 S. E. 591, 10 A. L. R. 654. See, also, Robinson v. Elliott, 22 Wall. 513, 22 L. Ed. 758.

The cars were left in the possession of the bankrupt with power to sell them, and thereby the defendant allowed the bankrupt to get the credit of the ownership of the cars. The defendant cannot insist on its title to the cars, as the rights of creditors have intervened. See cases cited supra.

The documents constituted what are commonly known as "conditional sales," i. e. sales with a condition that title shall not pass till payment. Many cases may be found where contracts of conditional sale have been held good in bankruptcy; but they are all, so far as I am aware, cases involving personal property which was used in the business of the bankrupt, such as machines for manufacturing goods. None of them are cases where the property covered by the contracts was offered for sale by a trader.

Let a decree be entered that the defendant pay to the plaintiff the sum of $28,749.05, being the total amount for which the cars taken by the plaintiff were sold, together with the amounts received in August from the sale of secondhand cars covered by the agreement of August 4th.