## In re MASSACHUSETTS MOTORS CO., Inc.

## Petition of FEDERAL FINANCE CORPORATION.

(District Court, D. Massachusetts. September 21, 1923.)

No. 28092.

Bankruptcy ⬥140(1)—Notice of reservation of title to autombiles in vendor not being given to public, title passes to trustee on bankruptcy of dealer.

Where one financing an automobile dealer took as security documents under which title was not to pass to dealer until they were paid for, but dealer was to have possession and could sell, and no notice of this arrangement was given to the public, title to such automobiles passed to dealer's trustee in bankruptcy.

In Bankruptcy. In the matter of the Massachusetts Motors Company, Inc., bankrupt. On petition by the Federal Finance Corporation for review of a ruling of the referee. Ruling affirmed.

See, also, 291 Fed. 679.

The report of James M. Olmstead, Referee in Bankruptcy, was as follows:

Massachusetts Motors Company, Inc., incorporated under the laws of Massachusetts, as its name implies, was engaged in the business of selling automobiles. It was a dealer, and not a manufacturer. The respondents, the Commercial Finance Corporation, Mutual Finance Corporation, Federal Finance Corporation, and Guaranty Security Company, hereinafter called the Finance Companies, were engaged in financing concerns in the automobile and other businesses. They belonged to the H. V. Greene series of companies, and the majority of their stock was supposed to be controlled by the Greene Company. The president of the Commercial and Mutual Finance Corporations was Mr. Walter G. Burns, who was also a director of the Back Bay National Bank, with which the Massachusetts Motors Company, Inc., did its banking business, the bank occupying the first floor, and the debtor company the third floor, of the so-called Terminal Building on Massachusetts avenue.

As stated in the brief of learned counsel for the respondents, "this case involves the determination of title to certain motor vehicles. The vehicles were in the possession of the bankrupt, and passed into the possession of the receivers, and later of the trustees, in bankruptcy."

So far as the title to any vehicles not in the possession of the trustees is concerned, redress must be had in some other suit, either before the honorable District Judge or a state tribunal, in accordance with the law as determined by the decision of the Supreme Court of the United States in the case of Weidhorn v. Levy, 253 U. S. 268, 40 Sup. Ct. 534, 64 L. Ed. 898. But, when a court is in possession of assets, it may determine "the extent and character of liens thereon or rights therein." Whitney v. Wenman, 198 U. S. 539, 552, 25 Sup. Ct. 778, 49 L. Ed. 1157; Murphy v. John Hofman Co., 211 U. S. 562, 569, 29 Sup. Ct. 154, 53 L. Ed. 327; Weidhorn v. Levy, 253 U. S. 268, 271, 40 Sup. Ct. 534, 64 L. Ed. 898.

The evidence may be summarized, and I find the facts to be as follows: The course of business of the debtor, Massachusetts Motors Company, Inc., hereinafter called the Motors Company, was with the purchase from the manufacturer of an automobile to receive an invoice accompanied by a draft and bill of lading. The Motors Company then took the draft, together with the bill of lading and invoice, to one of the Finance Companies, and, in the case of the Commercial and Mutual Corporations, borrowed about 80 per cent. of the value of the automobile. A check was given by the Finance Company to the Motors Company, or made payable to the Back Bay National Bank, where the Motors Company had its deposit. Upon the payment of the draft the bill

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of lading was given the Motors Company and in turn presented to the railroad company, whereupon the automobile was delivered into the possession of the Motors Company. The course of dealing with the Federal Finance Corporation was somewhat different than that with the Commercial and Mutual, but in effect it was substantially the same.

The dealings with the Finance Companies commenced in the year 1919, and lasted until the filing of the petition in bankruptcy on August 28, 1920, when the concern had liabilities of about $760,000 and about 300 creditors. Mr. Arthur P. Young was the first treasurer of the company, and as the relations between the Finance Companies and the Motors Company were very intimate and close, the Finance Companies had occasion to appoint auditors and accountants to examine the books of the Motors Cmpany. These books were at all times in a very chaotic state. It was impossible for the accountants to learn the exact financial condition of the Motors Company. A Mr. George V. Ricker, one of the first auditors, reported that the company was insolvent in February, 1920. A Mr. Damon, who testified, held that it was insolvent on December 31, 1919. Mr. Austin M. Pinkham, attorney for and also an officer of both the Commercial and Mutual Companies, thought it was insolvent in July, 1920. Mr. Pinkham succeeded Mr. Young as treasurer of the company, and served until July, 1920.

The real gist of this case turns upon the legal effect and construction of Exhibits 3, 4, 5, 6, and 7, copies of which are attached to the brief of the testimony of the learned counsel for the respondent Finance Companies. In order to secure the Finance Companies for their loans, there were first given to them instruments evidenced by Exhibits 3 and 7. In my opinion both of these instruments are mortgages. Exhibit 3 was received in connection with a description of a car mentioned in it; a note was given for the amount of the loan; the Motors Company was mentioned as the dealer, and the instrument contemplated a reconveyance of the car to the dealer when the note was paid; the possession of the car remained with the dealer, but it was provided that there was to be no sale, possession by anybody else, or removal without the written consent of the Finance Company, which was in effect the mortgagee. It was furthermore provided that, on default on or in case of bankruptcy, the Finance Company, or mortgagee, might enter and take possession, and upon sale, after 15 days' notice, all expenses were to be deducted and charged to the dealer. Either the same or substantially the same provisions apply to Exhibit 7.

Coming now to Exhibits 4, 5, and 6, admitted in the respondents' law brief to be conditional bills of sale, the Commercial Finance Corporation used Exhibit 4, the Mutual Exhibit 5, and the Federal Exhibit 6. These three instruments were entitled "Conditional Sale Lease Agreement," and were drafted by Mr. Pinkham. Here we have the reverse situation, in that the Finance Companies become the grantors or lessors, and the Motors Company the lessee. The Finance Company acquired title by paying the invoice. The instruments provided for the giving of notes as payment of rental, with the usual description of cars involved in the transaction. Upon payment of the notes there was the usual passing of title as a condition subsequent to the lessee or vendee dealer. They contained agreements by the dealer not to remove, sublet, assign the lease, operate, or move any car under its own power, or suffer any seizures or attachments. Then followed the usual provisions as to the right of the lessor to proceed to repossess in case of any default, or bankruptcy, etc.

The testimony showed that all of these provisions were substantially waived, and that the instruments were in effect only memoranda of the sale. The automobiles continued in the possession of the Motors Company, and were never in the possession of the Finance Companies, and no demand for the possession was ever made by the Finance Companies until as late as August 26th, two days before the failure, when the Finance Companies undertook to make certain seizures of cars. It was the understanding between the Motors Company and the respondents that, when the cars were sold, the loans should be paid, and this was spoken of throughout the hearings as "clearing the cars"; but the purchasers from the Motors Company always

understood that in their purchase they were getting a clear title, and they had absolutely no knowledge of any claim or secret lien of any Finance Company upon the cars.

The Massachusetts Motors Company, Inc., did business throughout Massachusetts, New Hampshire, and Rhode Island, and had nine different agencies located in the principal cities thereof. The cars purchased by it were moved from place to place, and agency to agency, without any protest on the part of the Finance Companies, who were all well aware of its transactions.

A line of credit of $250,000 was given to the Motors Company in 1919 by the Commercial Finance Corporation, but the Motors Company, always short of cash, failed to clear its cars, and fell behind with the Finance Companies to the extent of several hundred thousand dollars. In February, 1920, as the result of meetings and conferences, an arrangement was made by which an issue of $317,000 worth of stock was taken in payment of an indebtedness of about $200,000 for cars not cleared, but the notes and leases given for arrears were subsequently retained by the Finance Companies as additional collateral security.

While the relationship between the Mutual, Commercial, and Federal Finance Corporations and the Massachusetts Motors Company, Inc., was not exactly a partnership, as such partnerships are not legal between corporations, the relationship was certainly so close that the directorates may be said to have been interlocking. Mr. Pinkham, the same counsel for two of the Finance Companies, was treasurer of the Massachusetts Motors Company, Inc., and I find that the Finance Companies were affected with notice and knowledge of its affairs, transactions, and conditions. During the year 1920 some complaint was made that the cars had not been cleared, and additional security was demanded, and this was given to the Finance Companies in the form of either conditional sale contracts or leases which the Massachusetts Motors Company, Inc., received from its customers to whom it had sold cars, and when it repossessed cars it pledged some of those cars to the Finance Companies as security for its numerous loans from them. I find that the giving of these securities within four months of the filing of the petition on the 28th day of August, 1920, amounted to preferences, and that owing to the intimate knowledge which the Finance Companies had of the affairs of the Motors Company, they must have had reasonable cause to believe that the enforcement of such transfer would effect a preference. So much for the facts.

Coming now to the application of the law to the facts as above summarized, the counsel for the respondents in their exhaustive brief have ably discussed the case of In re Harrington, 29 Am. Bankr. Rep. 690, 32 Am. Bankr. Rep. 828, 212 Fed. 542; and Flanders Motor Co. v. Reed, 33 Am. Bankr. Rep. 842, 220 Fed. 642, 136 C. C. A. 250, which was decided in this district, and attempted to show that the issues in this case are not to be governed by the principles contained in the Harrington Case. While the facts of this case are not the same, I am of the opinion they are sufficiently similar to those in the Harrington Case to bring this case within the doctrine therein defined.

Perhaps the two leading cases on the subject of necessity of delivery are Dempsey v. Gardner, 127 Mass. 381, 34 Am. Rep. 389, in which it was held that a bill of sale of personal property, unaccompanied by delivery, the grantor retaining possession, is invalid as against subsequent purchasers and attaching creditors, and Casey v. Cavaroc, 96 U. S. 467, 24 L. Ed. 779, in which Justice Bradley delivered an elaborate opinion.

That conditional sale contracts are valid is settled by the leading case of Harkness v. Russell, 118 U. S. 663, 7 Sup. Ct. 51, 30 L. Ed. 285, in which case, however, the evils of secret liens and apparent ownership are well defined. Rock Island Plow Co. v. Reardon, 222 U. S. 354, 360, 363, 32 Sup. Ct. 164, 56 L. Ed. 231.

In the present case the question of recording was discussed, Mr Pinkham being of the opinion that recording was not necessary, and Mr. West, his partner, thinking that it was, and calling Mr. Burns' attention to it. As a matter of fact the Federal Finance Corporation did record some of its leases, and so far as the recording conforms to and complies with the act of 1915

(chapter 226), which amended chapter 198 of the Revised Laws, and repealed the act of 1913 (chapter 656) relative to the recording of a bill of sale as security. I find that such recording may relieve the Federal Finance Corporation from liability as to such recorded leases, if valid. See Worcester Morris Plan Co. v. Mader. 236 Mass. 435, 128 N. E. 777. It has also been held in this commonwealth that the recording of a bill of sale does not make it a mortgage. Williams v. Nichols, 121 Mass. 435; Clark v. Williams, 190 Mass. 219, 76 N. E. 723.

Assuming. therefore, that the leases evidenced by Exhibits 4, 5, and 6 are conditional sales, the law as to those is well stated in the learned brief of counsel for the complainant trustees as follows:

"When the property is delivered to the vendee for consumption, or sale, or to be dealt with in any way inconsistent with the ownership of the seller, or so as to destroy the lien or right of property, the transaction cannot be upheld as a conditional sale, and is a fraud upon the creditors of the vendee."

And again:

"When a vendor parts with the possession of property to the vendee, and invests him with the right to sell as his own, and treat the proceeds as his own, then the sale is absolute." Pontiac Buggy Co. v. Skinner (D. C.) 20 Am. Bankr. Rep. 206, 158 Fed. 858; In re Garcewich, 8 Am. Bankr. Rep. 149, 115 Fed. 87, 53 C. C. A. 510.

As to the leases evidenced by Exhibits 3 and 7, if they are construed to be a mortgage, unaccompanied by delivery to the mortgagee, they are invalid for want of record.

In re Irwin (D. C.) 268 Fed. 162, 46 Am. Bankr. Rep. 288, is a case where the facts are similar to those in the case in issue. An Erie, Pa., debtor gave a bill of sale to a Rochester, N. Y., finance company, which as dealer or lessor leased the car for a certain rental sum, taking after a payment a judgment time note for the balance due. No delivery of the car was ever made to the finance company, unless the giving of a $1 storage warehouse receipt amounted to a symbolical delivery; the agreement being that the car should be kept in the lessee's show room in Erie. Such transfer was held invalid as against the trustee in bankruptcy of the dealer in automobiles.

The case of In re Hallbauer (D. C.) 275 Fed. 126, 46 Am. Bankr. Rep. 132, affirmed in General Securities Co. v. Driscoll (C. C. A.) 271 Fed. 295, 46 Am. Bankr. Rep. 472, has strong resemblance to the present case, and was as follows: Hallbauer, the bankrupt and mortgagor, was allowed to retain an automobile in his salesroom and deal with it as his property, with full right to sell. This transaction was held invalid as against the trustee. This case goes farther than any others which I have been able to find, and holds that even *recording* would not obviate "the harmful consequences to third persons of so conferring on the possessor apparent ownership and right of disposition."

The case against the Guaranty Security Corporation was submitted on an agreed statement of facts, and a determination of the issues as to the other companies will undoubtedly be a solution of the issues so far as this respondent is concerned.

Such are the reasons, as above set forth, for the decree already entered. I deem it proper, however, to state that this case involved hearings extending over a period of nearly nine months, and embraces in the testimony and exhaustive briefs of counsel on law and facts about 1,000 pages. The case necessarily involved many issues, which perhaps cannot be determined in this present litigation; but, if the main question of title can be determined, certainly a step will have been taken to aid in the solution of the other issues.

And the said question, together with the pleadings, briefs of learned counsel, testimony, and exhibits, is certified to the judge for his opinion thereon.

George W. Reed, of Boston, Mass., for trustee in bankruptcy.
Daniel J. Daley, of Boston, Mass., for creditor.

LOWELL, District Judge. The proceedings before the referee related to several defendants, but the Federal Finance Corporation was

the only one which filed a petition for review. The testimony is voluminous; the material facts, however, may be stated briefly.

The Massachusetts Motors was a dealer in automobiles. It borrowed money from the petitioner to pay drafts attached to bills of lading accompanying shipments of motor cars. The bankrupt gave as security for the advances documents known as leases, by the terms of which the title to the cars should not pass to the bankrupt till the cars were paid for. There was a demand note for the amount of money advanced on each car. The cars were unloaded from the railroad and taken by the bankrupt to its salesroom; no notice was given to the customers of the bankrupt that the cars did not belong to it. The arrangement between the parties was that the cars should be sold and then the loans paid. Several cars remained in the salesroom of the bankrupt at the time of its bankruptcy, and came into the possession of the trustees. The proceedings before the referee related to the title to these cars.

The learned referee ruled that the trustee in bankruptcy got title to the cars, and cited the following cases: Casey v. Cavaroc, 96 U. S. 467, 24 L. Ed. 779; Rock Island Plow Co. v. Reardon, 222 U. S. 354, 32 Sup. Ct. 164, 56 L. Ed. 231; In re Garcewich, 115 Fed. 87, 53 C. C. A. 510; Pontiac Buggy Co. v. Skinner (D. C.) 158 Fed. 858; In re Harrington (D. C.) 212 Fed. 542.; Flanders Motor Co. v. Reed, 220 Fed. 642, 136 C. C. A. 250; In re Irwin (D. C.) 268 Fed. 162; In re Hallbauer (D. C.) 275 Fed. 126, affirmed in General Securities Co. v. Driscoll (C. C. A.) 271 Fed. 295.

In my opinion the ruling was correct. The documents provided for what are commonly called conditional sales of personal property—i. e., sales where the title is to remain in the vendor until payment—and where such sales relate to property which is the stock in trade of a dealer, and no notice is given to the public that the dealer does not own the articles offered for sale, the terms of the documents reserving title in the vendor are invalid as against a trustee in bankruptcy. In addition to the cases cited by the learned referee, see Reed v. Guaranty Security Corporation (D. C.) 291 Fed. 580, and Reed v. Federal Finance Corp. (D. C.) 291 Fed. 679, and cases cited.