LOMBARD GOVERNOR COMPANY, A Body Corpor-
ate of New Jersey, and NATIONAL METER
COMPANY, A Body Corporate of
New York,

*vs.*

MAYOR AND CITY COUNCIL OF BALTIMORE, A
Body Corporate; NATIONAL BANK OF BALTI-
MORE, A Body Corporate; FORT WAYNE ELEC-
TRIC WORKS, A Body Corporate of Indiana;
TRUMP MANUFACTURING COMPANY, A Body
Corporate of Ohio, and EDMUND F. HELLINGS,
CLARENCE M. MORFIT and JOHN G. SCHILPP,
Receivers of the McCay Engineering Company, A
Body Corporate.

*Municipal contracts: duty of contractor to exhibit vouchers.
Material men: no liens; equity
no jurisdiction.*

Ordinance No. 25, approved April 4, 1898, provided that
in the building contracts of the City of Baltimore there shall be
a clause requiring the contractor, before delivering the building,
etc., to produce and exhibit vouchers showing a settlement by
him in full with all persons or corporations who were engaged
by him in the construction of the building, etc. A similar pro-
vision was inserted in Sanitary Contract No. 51 for the con-
struction of the Baltimore Sewerage System. *Held,* that nei-
ther the ordinance nor the terms of the contract gave material
men who had furnished materials for such construction any
lien for the materials furnished under the contracts; nor does
it give such material men any right to any lien by invoking the
interposition of a court of equity.                    p. 312

*Decided June 25th, 1913.*

Appeal from the Circuit Court of Baltimore City (BOND, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Joseph T. England* and *W. Milnes Maloy* (with *Maloy, Brady and Embert* on the brief), for the appellant.

*Alexander Hardcastle, Jr.,* filed a brief for Edmund F. Hellings *et als.,* receivers, appellees.

*John Hinkley* and *Jacob France,* filed a brief for the National Bank of Baltimore, appellee.

*S. S. Field* and *Robert F. Leach, Jr.,* filed a brief for the Mayor and City Council of Baltimore, appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court of Baltimore City dismissing the bill of complaint of the Lombard Governor Company and the National Meter Company against the Mayor and City Council of Baltimore, and certain other defendants.

The material allegations of the bill are to the following effect:    In May, 1910, the McCay Engineering Company entered into a contract with the Mayor and City Council of Baltimore, known as Sanitary Contract No. 51, by which the McCay Company "undertook to furnish the electrical and mechanical equipment, to erect metal stairways, build special floors, piers and abutments, and other parts of and equipment for a building for the Sewage Disposal Works erected under the supervision of the Sewerage Commission of the

City of Baltimore" * * * "which lot and improvements there-
on are the property of the Mayor and City Council of Balti-
more."

It is further alleged that the Lombard Governor Company
furnished to the McCay Company machinery and equipment
to the value of $949.56, which is still due and unpaid; that
the National Meter Company furnished machinery and equip-
ment to the amount of $1,365.50; that the Fort Wayne
Electric Works and the Trump Manufacturing Company like-
wise furnished certain parts of the equipment, the value of
which is not given, but on the contrary the bill alleges that
the plaintiffs are without knowledge what rights these cred-
itors have, and whether they or either of them have waived
any of their rights; that the National Bank of Baltimore
had loaned to the McCay Company a certain sum of money,
amount unknown, and that as security therefor the McCay
Company had assigned to the bank, Sanitary Contract No.
51, or certain rights thereunder; that the McCay Company
became financially embarrassed and in April and May, 1912,
receivers were appointed for that company, both in Delaware,
where it was chartered, and ancillary receivers in Baltimore
City, and such ancillary receivers are also made parties to
the bill of complaint. The bill also sets out that there still
remains in the hands of the City of Baltimore $9,012.32, a
large portion of which is now due and payable under Con-
tract No. 51, and that the said Contract No. 51 has been
fully performed. The prayer of the bill is that jurisdiction
over this fund be assumed by the Court; a discovery had of
the amount of the claims of the several parties thereto; that
the plaintiffs may be decreed to have a lien or claim in the
nature of a lien, on the funds in the hands of the city; and
that out of such fund the plaintiffs may be paid the amounts
of their claims. The Bank of Baltimore filed an answer to
the bill of complaint and a demurrer to the 9th paragraph
of the bill, and demurrers were filed on the part of the
Mayor and City Council of Baltimore and the receivers of

the McCay Company to the entire bill. The case was heard upon the demurrers, and by the decree of the Circuit Court the demurrers were sustained, and the bill dismissed. In passing upon this case, therefore, this Court can deal only with the allegations of the bill, without any reference whatever to the matters set forth in the answer of the bank.

The plaintiffs rely for the support of their case upon the provisions of an ordinance of the Mayor and City Council of Baltimore, approved April 4th, 1898, being Ordinance No. 25, and which reads as follows:

"An ordinance to provide for the insertion in all contracts for the construction of city buildings, of a clause requiring the contractor or contractors to produce vouchers showing settlement in full for materials used in such construction.

Section 1. *Be it enacted and ordained by the Mayor and City Council of Baltimore,* That in all contracts hereafter made by the Mayor, or any of the city's departments for the construction of city buildings, there shall be inserted a clause stipulating and providing that the contractor or contractors so employed shall at time of tendering the delivery of the completed buildings, also produce vouchers showing settlement in full by him or them, with all persons or corporations, who have furnished labor and materials used in the construction of said building."

This ordinance, it is claimed, must be read into, as constituting a part of Sanitary Contract No. 51, but whether that contention be well founded or not, substantially the same ground is covered by a provision in the contract itself, which is

"The contractor shall furnish the commission with satisfactory evidence that all persons who have done work or furnished material under the contract and who have given written notices to the commission, before or within ten (10) days after the final completion and acceptance of the whole work under the contract,

that any balance for such work or materials is due and
unpaid have been fully paid or satisfactorily secured.
And in case such evidence is not furnished as aforesaid,
such amount as may be necessary to meet the claims
of the persons aforesaid may be retained from any
moneys due the contractor under the contract until the
liabilities aforesaid shall be fully discharged or such
notice withdrawn.

The city or the commission may also, with the writ-
ten consent of the contractor, use any moneys retained,
due or to become due under the contract, for the pur-
pose of paying for both labor and material for the
work for which claims have not been filed in the office
of the commission."

The plaintiffs both in their oral argument and in their
brief, conceded that they are not entitled to any lien as
against the city's property for materials furnished to the
McCay Engineering Company, and that they are not entitled
to recover the amounts due them by means of attachment,
but the bill is filed upon the theory of an equitable jurisdic-
tion to treat the fund remaining in the hands of the city
as a trust fund, which may be subjected to their claims, the
effect of this is to say, that while they have no lien or right
of attachment at law, they can accomplish the same thing
through the interposition of a Court of Equity. This con-
tention rests entirely upon three cases. In the City of New
York there was an ordinance of the Mayor and Alderman,
that

"In all contracts for work done by or for the cor-
poration, the head of a department having charge
thereof shall cause to be inserted a provision that the
payment of the last installment due in pursuance
thereof shall be retained until the head of such de-
partment shall have satisfactory evidence that all per-
sons who have done work or furnished materials under
any such contract, and who may have given written
notice to the head of the department any time within

ten days after the completion of the work that any bal-
ance for work or material is still due and unpaid, have
been fully paid and secured such balance, and if any
person so having done work or furnished materials and
given such notice as aforesaid shall furnish satisfactory
evidence as aforesaid to the department that money is
due to him by the contractor, such head of department
shall retain such last installment, or such portion there-
of as may be necessary, until such liability shall be dis-
charged or secured."

It will be observed that the language in this case is far
more mandatory in form than that of the ordinance passed by
the Mayor and City Council of Baltimore.   The New York
Ordinance came up for construction in the *Merchants and
Traders' National Bank* v. *New York,* 97 N. Y. 355, and
it was there held that the purpose of the ordinance was to
secure persons furnishing labor and materials to contractors
with the city some of the advantages which the lien law of
the State gave, and that this was sought to be accomplished
by making the city a trustee of the unpaid balance due upon
the contract with it for the benefit of such persons, but at
the same time the Court distinctly held, that "the city in
such a contract assumed no express liability to pay the labor-
ers and material men and can not be sued upon such a liabil-
ity, but it is placed under an implied obligation to hold the
money as trustee according to the terms and effect of the con-
tract which can be enforced in an action to which all per-
sons interested in the money are made parties."   It was
evidently this language which induced the plaintiffs to make
as parties defendant in this case the Fort Wayne Electric
Works and the Trump Manufacturing Company, neither of
which have appeared in the case, nor as against which, as
non-resident corporations, does any notice by advertisement
appear from the record to have been made.   The next case
is that of the *Mechanics and Traders' National Bank* v.
*Winant,* 123 N. Y. 265, in which the question arose between

LOMBARD GOV. CO. vs. M. & C. C. OF BALT. 309

Md.]                    Opinion of the Court.

an assignee of the original contractor and a sub-contractor as to the relative priority of their claims, and that was the sole question passed upon in that case. The case of *Luthy* v. *Woods*, 6 Mo. App. 67, grew out of a contract in connection with the building of a school house, under the phraseology of a contract which provided that the school board might retain certain funds in their hands for the purpose of meeting the demands of those who furnished materials, and this provision of the contract was held to constitute an equitable assignment of the fund, not the conferring of a positive right of action arising out of the relation of original and sub-contractor. The case of *St. Louis* v. *Keane*, 27 Mo. App. 642, is hardly in point inasmuch as in that case the city filed a bill of interpleader and brought the fund in its hands into Court for distribution, and the contest in that case related solely to the relative priorities between contending creditors of the contractor.

The appellants have referred to a case in the District Court of the United States *In the Matter of James E. Granberry, Bankrupt.* It is difficult to see upon what theory this case can be cited to support the appellant's claim. Mr. Granberry had entered into a contract with the Mayor and City Council of Baltimore for erecting and furnishing a heating plant and laundry machinery at the Field House in Patterson Park, and also for furnishing and delivering certain machinery at Walters Baths No. 1. At the time when Granberry was adjudicated a bankrupt, there was a balance still due him by the City of $796.70; this was claimed by his trustee in bankruptcy and by the Troy Laundry Company, which had furnished certain material to Mr. Granberry as contractor. The ordinance relied upon in this case was also set up in that case. No question was raised as to any standing of the parties, but it was expressly agreed that the District Court in Bankruptcy should adjudicate to whom this fund belonged, and after full hearing JUDGE MORRIS awarded the fund to Mr. Howard Embert, the bankrupt's trustee;

if in the present case the receivers of the McCay Company, the plaintiffs and the Mayor and City Council of Baltimore had all agreed upon a submission to the Circuit Court for a determination as to the proper ownership of the fund in question, the *Granberry case* would undoubtedly be an authority for its award to the receivers of the McCay Company. Instead of pursuing this course, the City and the receivers each demurred to the bill of complaint, and the order of JUDGE MORRIS constitutes no precedent whatever in determining the sufficiency or insufficiency of the bill.

As opposed to the view of the New York Court are numerous cases, reference to a few of which will be sufficient. In *Lesley v. Kite and the City of Phila.,* 192 Pa. 268, the proceeding was one in a court of equity, as in the present case. An ordinance of the City of Philadelphia provided that "the Director of Public Works shall give one month's notice of the date of final payment and satisfactory evidence shall be furnished that full compensation has been made for all labor and materials furnished previous to drawing a warrant for final payment." This was not a separate and independent ordinance, but included as part of an ordinance for the construction of sewers in that city. Kite & Co. had taken a contract to build, and the contract in a general way incorporated the provisions of the ordinance above recited. Kite not paying all of the sub-contractors, proceedings were instituted in equity, as in the present case, and upon demurrer the bill was dismissed. The opinion of the Court, after a statement of the facts, says:

"Properly construed * * * the ordinance relied on * * * never created nor was it intended to create, any contractual or other relation between the city and its contractors for municipal improvements, or sub-contractors under the latter, or between any of them, that would authorize the maintenance of any such proceeding as that now under consideration. If it did it would be clearly *ultra vires* the City Councils and void as being manifestly in conflict with sound principles of public policy * * * It is unnecessary to multiply

authorities for the purpose of showing that City Councils have no authority whatever, express or implied, to provide a new remedy in the nature of an attachment, lien or trust of any kind, whereby sub-contractors may enforce payment of their claim out of money due the principal contractor. On grounds of public policy the legislature has hitherto withheld from contractors and sub-contractors not only the right of lien on public buildings, but also the right of attaching money in the hands of the city. On the same principle it can not be successfully contended that Councils may by ordinance empower the Director of Public Works to retain money due one of the city's contractors in order that his creditors, who are not parties to the contract, may proceed by bill in equity or otherwise against him, and thus have the money applied to their claim."

A similar case arose in the District of Columbia, and was there decided by ALVEY, C. J., formerly of this Court. As in this case, the proceeding was by bill in equity, and in disposing of it JUDGE ALVEY says:

"This is an attempt by equitable garnishment to bind the money due the contractor Thomas in the hands of the municipal corporation of this District. This we think can not be done. If it could be done in this instance, it could be done in hundreds of other cases; and the consequences would be that the municipal government would constantly be liable to the obstruction and embarrassment in the administration of municipal affairs, that such claims and resulting litigation would necessarily produce. In the absence of express legislation making the municipal corporation liable to such proceedings, both reason and public policy forbid it."

Among the authorities cited by him is the case of *Merwin* v. *Chicago,* 45 Ill. 133, and the rule there laid down is as follows: "The city should not be subjected to this species of litigation, no matter what may be the character of the indebtedness. If we hold it must answer in all these cases and the exemption from liability be allowed to depend in each case upon the character of the indebtedness, we still have it liable

to a vast amount of litigation in which it has no interest and obliged to spend the money of the people and the time of its officials in the management of matters wholly foreign to the object of its creation. A municipal corporation can not properly be turned into an agency or instrument for the collection of private debts. It exists simply for the public welfare and can not be required to consume the time of its officers or the money in its treasury in defending suits in order that one private individual may the better collect a demand due from another. * * * A municipal corporation is a part of the government. Its powers are held as a trust for the common good. It should be permitted to act only with reference to that object, and should not be subjetced to duties, liabilities or expenditures merely to promote private interests or private convenience."

It will be thus seen that so far as the principle applicable to these cases is concerned, outside of the State of New York, no distinction whatever is drawn between the rule applicable in a suit at law and a proceeding in equity; and upon the same ground relied on in the cases thus quoted from, a like conclusion has been reached in *Electric Appliance Co.* v. *U. S. F. and G. Co.,* 110 Wis. 434; *Albany* v. *Lynch,* 119 Ga. 491; *McDougal* v. *Supervisors,* 4 Minn. 184; *Wallace* v. *Lawyer,* 54 Ind. 501; *Switzer* v. *Wellington,* 40 Kan. 250.

While a number of other questions are raised or suggested in the brief of the appellants, they relate to matters which can have no material effect in the determination of this case, and need not therefore be discussed. In view of the very great weight of authority, and the sound ground of public policy upon which the conclusion is placed, the decree appealed from will be affirmed.

*Decree affirmed, with costs to the appellee.*