## E. I. DU PONT DE NEMOURS & CO. v. CITY OF GLENWOOD SPRINGS, COLO.*

Circuit Court of Appeals, Eighth Circuit, April 18, 1927.

No. 7512.

1. **Municipal corporations ⊂⇒376—One furnishing explosives to contractor cannot recover unpaid balance from city, because in letting contract it failed to require proper bond.**

Complaint against city by one furnishing explosives to construction company building tunnel, asserting liability for unpaid balance because city, in letting contract, failed to require proper statutory bond, and failed to retain moneys due contractor, *held* not to state cause of action, in view of repeal of Rev. St. Colo. 1908, §§ 5406, 5407, by Laws Colo. 1921, p. 674, § 1, where city's contract showed no positive agreement to withhold funds for payment of labor and material; there being no privity of contract between plaintiff and city.

2. **Municipal corporations ⊂⇒376—City should not be subjected to liability merely to promote private interest or convenience.**

Municipal corporation is part of government, and should be permitted to act only with reference to common good, and should not be subjected to duties, liabilities, or expenditures merely to promote private interest or private convenience.

In Error to the District Court of the United States for the District of Colorado; John Foster Symes, Judge.

Action by E. I. Du Pont de Nemours & Co. against the City of Glenwood Springs, Colo. Judgment of dismissal was entered, and plaintiff brings error. Affirmed.

Edwin H. Park, of Denver, Colo., for plaintiff in error.

C. W. Darrow, of Glenwood Springs, Colo., for defendant in error.

Before KENYON, Circuit Judge, and SCOTT and SANBORN, District Judges.

*Rehearing denied July 2, 1927.

JOHN B. SANBORN, District Judge. This is a suit brought by the plaintiff in error to recover $6,589.23 and interest from the defendant in error. The parties will be given in this opinion the designations which they had in the court below, namely, plaintiff and defendant. The complaint was demurred to, and the demurrer sustained. An amended complaint was filed, to which a demurrer was filed and sustained. The plaintiff elected to stand upon its amended complaint, and thereupon judgment of dismissal was entered as to the defendant.

[1] The only question involved is whether the amended complaint stated a cause of action. For the purpose of this opinion, it is not necessary to set forth in detail all of the allegations, which are voluminous. In a general way, the facts shown by the complaint are these:

In the month of September, 1922, the city advertised for bids for the construction of a tunnel for improving its waterworks. In October, 1922, R. A. White and K. V. Johnson filed their bid, in accordance with instructions and forms given them by the city, and offered, as a surety upon their bond, the Southern Surety Company. The bid was made for and accepted as the bid of the White & Johnson Construction Company, "either then or thereafter organized by the same parties who made and were parties to and interested in said bid, and all with the full knowledge and consent of the city." The contract and bond were executed by the White & Johnson Construction Company on or about October 11, 1922; but the city did not accept the Southern Surety Company as surety, but took K. V. Johnson, R. A. White, and A. L. Johnson as sureties, who were interested in the construction company, and who subsequently turned out to be worthless. None of these men could qualify under the law as sureties on such a bond. Between November 18, 1922, and November 30, 1923, the plaintiff sold to the White & Johnson Construction Company explosives of the value of $9,790.31, to be used and which were used in the construction of the tunnel. There remains unpaid of this amount $5,790.31, with interest at 6 per cent. to July 1, 1925, making a total indebtedness on that date of $6,589.23.

On the 7th of September, 1923, the city entered into a supplemental agreement with the construction company with reference to the construction of the tunnel, in which the city agreed that the total cost of all the work and materials should be $102,000 instead of the amount fixed by the contract, of which $62,230.27 had been paid, leaving a balance of $39,769.73, which the city agreed to pay in monthly estimates, and required the construction company to give a chattel mortgage on all its tools, machinery, and material on the ground to secure the city against loss, demands, liens, claims, and failure to perform its agreement. The city reserved the right to require additional sureties on the bond of the construction company, but did not do so. The plaintiff, in making the sale of material to the construction company and in extending credit to it, examined the requirements, instructions, specifications, contract, and bond, and found them to be in the form required by law, and duly executed and approved by the proper city officials, and relied upon compliance by the city with all statutory requirements, and particularly with the requirement that the city would demand a good and sufficient bond of the contractor, either with a surety company or with individual persons owning real estate in Colorado, in double the amount of their individual liability, and assumed that the city had required such a bond and had complied with the statutes. The plaintiff also relied upon the city's requiring from the contractor sworn statements of all amounts owing for labor and material, as required by the contract; but the city failed to withhold amounts due materialmen, and permitted its engineer to give estimates, and appropriated money to pay and paid the same, without requiring a statement of any kind from the construction company as to obligations due for material, and particularly the obligation due the plaintiff. It neglected and refused to pay the plaintiff any part of its debt due from the contractor for materials furnished and used by it.

In November, 1923, the city took over the work, but permitted the construction company to remain in charge and control of the construction of the tunnel, and continued to make payments without affidavits or statements from the construction company as to the amount of unpaid labor or material, after it had been notified by the plaintiff of its unpaid account for explosives and demand for payment. The city paid, after such notice and demand, some $40,000 to the construction company, and retained no portion of any estimates for labor or material or otherwise, and took over a large amount of the explosives and materials furnished by the plaintiff to the contractor, of the value of at least $2,000, and used the same in and about the comple-

tion of the water works tunnel. The contract has been fully performed, the improvements accepted, and the city is enjoying the benefits. The form of the bid of White & Johnson is set out in the amended complaint, and also the contract between the city and the construction company, as well as the bond given by the company to the city.

In sustaining the demurrer to the complaint, the court below seems to have relied very largely upon the fact that there was no bid made by the construction company, as required by the laws of Colorado, and that therefore the contract was absolutely void, and no recovery could be had under it—citing Town of Durango v. Pennington, 8 Colo. 257, 7 P. 14; Colorado Springs v. Coray, 25 Colo. App. 460, 139 P. 1031; Sullivan v. Leadville, 11 Colo. 483, 18 P. 736; Denver v. Hindry, 40 Colo. 42, 90 P. 1028, 11 L. R. A. (N. S.) 1028.

The plaintiff attempted in its pleading to avoid this difficulty by alleging that White & Johnson made the bid for the corporation, which was then or thereafter organized, and that that was understood by the city. We think it is unnecessary to pass upon the question as to whether the White & Johnson Construction Company had a valid contract with the city or not. There is no claim that the plaintiff ever sold the city anything, or that the plaintiff had any express agreement with the city to pay for the explosives furnished the construction company. The theory of the plaintiff seems to be, either that the contract with the construction company obligated the city to pay materialmen for material furnished to the White & Johnson Construction Company, or that it was in some way a trustee for the plaintiff and other materialmen.

There is no dispute as to the fact that the city had authority to enter into such a contract as is referred to in the amended complaint, and there is no question but that it failed to require the bond provided for by statute. We know of no authority for the proposition that, because the officers of a city, in letting a contract, fail to require the proper statutory bond, that makes the city liable to all persons furnishing labor or material to the person to whom the contract was let. The plaintiff, however, says that the city, in the contract with the construction company, either agreed that it would pay for labor or material furnished to the contractor, or that it constituted itself a trustee for laborers and materialmen.

Section 5406, Revised Statutes of Colorado 1908, required municipal corporations contracting for the construction of public works to withhold payment of moneys due contractors to satisfy the claims of materialmen and others. Section 5407 provided that, before any payment was made to a contractor by a municipal corporation under a contract for the construction of public works, it should require a verified statement giving the names of all persons to whom any money was due for material or labor. In the case of Western Lumber & Pole Co. v. Golden, 23 Colo. App. 461, 469, 130 P. 1027, reviewed in Golden v. Western Lumber & Pole Co., 60 Colo. 382, 154 P. 95, it was held that, under these sections of the statutes, the city was constituted a trustee for materialmen furnishing material under a contract of the character referred to. These sections were repealed by the Colorado Legislature at its session in 1921 (Laws Colo. 1921, p. 674, § 1), and were not in force and effect when the contract referred to in the amended bill of complaint was made.

The claim of the plaintiff, however, is that the city, by its agreement, promised to do, with respect to laborers and materialmen, what the statutes of Colorado formerly would have required it to do. The provisions of the contract referred to are these:

"25. Payment shall be made to the contractor in cash as authorized by ordinance in monthly installments of 90 per cent. of all moneys due for work done the preceding month under and in accordance with the provisions and stipulations of this contract based upon monthly estimates of work completed, made and certified by the engineer to the council, the city may reserve, however, from said 90 per cent. sufficient of said moneys to cover the amount of any unpaid claims for material or labor or amounts due to any subcontractor, materialmen or other person, as the same may be made to appear when any monthly installment is due; it being the intention to reserve to the city 10 per cent. of the amount due from time to time under said contract to insure the completion of the work according to the provisions of this contract, without any claim upon said 10 per cent. for amounts due subcontractors, materialmen, or other persons. Waiver by the city of any of the above requirements or failure of the city to retain the amounts above specified shall in no event affect the liability of the contractor, his bondsmen, or sureties to complete the work according to the terms and conditions of said contract, nor to save the city harmless in every respect, as set forth in the

maps, plans, specifications, stipulations, and contract."

"28. It is specially agreed between the city and the contractor that the contractor shall pay promptly and in full to date of the allowance of any estimate, all claims for labor, material, and all claims due to any other persons in connection with said work, and to that end the contractor, before any estimate shall be allowed by the city, shall present a statement in writing, showing the amounts owing by him for labor performed or materials furnished, and the names of the persons to whom such sums are due; and, in case the contractor shall have sublet a part of this work with the consent of the city, the statement shall show the sum owing the subcontractor, and shall be accompanied by a statement of the subcontractor showing names of persons performing labor or furnishing materials at the instance of such subcontractor, and amounts due such persons, respectively. Such statement shall be verified under oath by the contractor or subcontractor that the same correctly states the sums owing for labor and materials, with the names of the persons to whom such sums are owing; waiver by the city of these requirements, or failure of the city to give notice to materialmen, subcontractors, or laboring men, by publication or otherwise, of the payment of the amount of any estimate except the final estimate, shall not in any way affect the liability of the contractor or his bondsmen or sureties to save the city free and harmless from any and all claims for labor, material, or claims of any kind due to any person in connection with said work."

The difficulty with the plaintiff's position is that an examination of the contract in this case shows nowhere any positive agreement on the part of the city to withhold funds for the payment of labor and material, although it had that privilege, and although the contractor, by the terms of the contract, was required to pay for labor and material performed and furnished in connection with the work.

In the case of Merchants' & Traders' Bank v. Mayor, Aldermen, and Common Council of the City of New York, 97 N. Y. 355, this situation was presented:

An ordinance of the common council of the city of New York required the heads of departments to insert in every contract for work a provision that the last installment payable thereunder should be retained until satisfactory evidence was furnished that all persons had been paid or secured, who had done work or furnished material under the

contract and who had given written notice, within 10 days after the completion of the contract, that a balance was still due them and unpaid. On the 19th day of August, 1875, while the ordinance was in force, the city, through the commissioner of public works, entered into a contract for improving a street, which contract contained the following clause:

"The said party of the second part hereby further agrees that he will furnish said commissioner with satisfactory evidence that all persons who have done work or furnished materials under this agreement, and who may have given written notice to the said commissioner before, or within ten days after the completion of the work aforesaid, that any balance for such work or materials is still due and unpaid, have been fully paid or secured such balance. And in case such evidence be not furnished as aforesaid, such amount as may be necessary to meet the claims of the persons aforesaid shall be retained from any moneys due the said party of the second part under this agreement until the liabilities aforesaid shall be fully discharged, or such notice withdrawn."

The contractor completed his contract on the 7th of January, 1878. On the 18th of October, 1876, he had assigned to the plaintiff all moneys due and to grow due under the contract. Both before and after the assignment, but before the completion of the contract, various laborers and materialmen gave written notices, as required by the contract, of amounts due them, and prior to the commencement of the action the notices had not been withdrawn and the claims had not been paid, and the amount remaining unpaid to the contractor under the contract was $12,000, which was less than the aggregate claims of the parties who had filed notices. The plaintiff, in its suit, joined as defendants all persons who had filed notices, alleging that they claimed some lien upon or interest in this balance.

The trial court dismissed the complaint and ordered that the balance unpaid upon the contract be paid by the city to the other defendants in the order in which their notices were filed. In the opinion, the court said: "The city in such a contract assumes no express liability to pay the laborers and materialmen, and cannot be sued upon such a liability; but it is placed under an implied obligation to hold the money as trustee according to the terms and effect of the contract which can be enforced in an action to which all persons interested in the money are made parties. Hence we think the judg-

ment made a proper disposition of the money."

A similar situation was presented in the case of Lesley v. Kite, 192 Pa. 268, 43 A. 959. The suit was brought by creditors, on behalf of themselves and all other creditors, to reach a fund which has been withheld by the city under a contract. A city ordinance of the city of Philadelphia provided: "The director of public works shall give one month's notice of the date of final payment, and satisfactory evidence shall be furnished that full compensation has been made for all labor due and materials furnished previous to drawing warrant for final payment."

Referring to this section of the ordinance, the court said: "Properly construed, the third section of the ordinance relied on by appellants never created, nor was it intended to create, any contractual or other relation between the city and its contractors for municipal improvements, or subcontractors under the latter, or between any of them, that would authorize the maintenance of any such proceeding as that now under consideration. If it did, it would be clearly ultra vires the city councils and also void, as being manifestly in conflict with sound principles of public policy long recognized and firmly established in this commonwealth." The court held that the bill of complaint stated no cause of action.

The case of Lombard Governor Co. v. Mayor and City Council of Baltimore et al., 121 Md. 303, 88 A. 140, 48 L. R. A. (N. S.) 678, Ann. Cas. 1915B, 865, also was a suit in equity by a materialman to reach an unexpended balance in the hands of the city of Baltimore due under a contract. There was an ordinance of the city of Baltimore which provided that in all contracts for the construction of city buildings there should be inserted a clause stipulating and providing that the contractor should, at the time of tendering the delivery of completed buildings, also produce vouchers showing settlement in full by him with all persons or corporations who furnished labor or materials used in the construction of the building. The contract in question provided that the contractor should furnish the city with satisfactory evidence that all laborers and materialmen who had given written notice to the city, before or within 10 days after the completion and acceptance of the whole work, that any balance for labor or material was due and unpaid, had been fully paid or satisfactorily secured, and that, in case such evidence was not furnished, such amount as was necessary to meet the claims of laborers and materialmen might be retained from any moneys due under the contract until such liabilities should be fully discharged or the notice withdrawn. It contained the further provision that the city might also, with the written consent of the contractor, use any moneys retained, for the purpose of paying for labor and material, claims for which had not been filed. The court came to the conclusion, on the authority of Lesley v. Kite, supra, Columbia Brick Co. v. District of Columbia, 1 App. D. C. 351, and Merwin v. Chicago, 45 Ill. 133, 92 Am. Dec. 204, that the action of the lower court in sustaining the demurrer and dismissing the bill was proper.

These cases indicate that, in the absence of a statutory requirement that a city pay claims for material furnished to a contractor, or that it withhold funds to insure payment of such claims, no enforceable liability on the part of the city exists therefor. We find no Colorado case holding to the contrary.

[2] There was no privity of contract between the city and the plaintiff in this case, no statute requiring the city to pay its claim or to act as a trustee for its benefit, and no agreement by the city to pay the plaintiff if the contractor failed to do so. A rule of law which would require a municipal corporation to pay for material furnished to a person to whom it lets a contract, because of the failure of its officers to require a sufficient bond, or because of their failure to exercise the privilege of withholding from the contractor payment of money due him, until claims for material are paid, would be against sound public policy. As was said in the case of Merwin v. Chicago, supra, "A municipal corporation is a part of the government. Its powers are held as a trust for the common good. It should be permitted to act only with reference to that object, and should not be subjected to duties, liabilities, or expenditures merely to promote private interest or private convenience."

The amended complaint stated no cause of action against the city, the demurrer was properly sustained, and the judgment of dismissal is affirmed.