## FREENY v. BAUERNSCHMIDT et al.

Circuit Court of Appeals, Fourth Circuit.
July 1, 1929.

No. 2836.

710

John H. Skeen, of Baltimore, Md., for appellant.

Frederick J. Singley and Malcolm H. Lauchheimer, both of Baltimore, Md. (Sylvan Hayes Lauchheimer, of Baltimore, Md., on the brief), for appellees.

Before WADDILL and PARKER, Circuit Judges, and COCHRAN, District Judge.

PARKER, Circuit Judge. This case involves a determination of the rights of subcontractors and materialmen in certain funds withheld by the city of Baltimore from the amount due a bankrupt contractor under a contract for the erection of a school building. The case arose on the petition of the trustee in bankruptcy of the contractor asking that the city be required to pay the funds over to him for the benefit of general creditors. Certain subcontractors and materialmen filed intervening petitions, claiming that they were entitled to the funds to the extent of their respective claims. The city thereupon paid the funds into court under an agreement that such payment should be without prejudice to the rights of any of the contending parties, and thereafter a hearing was had before the referee, who reported that the trustee was entitled to them. Upon exceptions to this report, the District Judge reversed the referee, and held that they should be paid to the subcontractors and materialmen, and from this holding the trustee has appealed.

The facts are undisputed and may be stated very briefly. The bankrupt, Mason, Curley, Brady, Inc., was a building contractor holding a contract with the city of Baltimore for the construction of a school building. This contract provided for monthly progress payments, and for the retention of 10 per cent. of the monthly estimates until the final completion of the work. It also contained, among others, the following provision, which is the one material for consideration here, viz.:

"When written notice is given to the supervising engineer before or within ten days after the completion and acceptance of the entire work under this contract, by persons having done work or furnished materials for said contract, that there is money due and unpaid for such work and materials, the contractor shall furnish the supervising engineer with satisfactory evidence that said money has been fully paid or satisfactorily secured by him. In case said evidence is not furnished as aforesaid, such amount or amounts as may be necessary to meet the claims of persons aforesaid may be retained from any moneys due the contractor under the contract until these liabilities shall be fully discharged or such notices withdrawn. The supervising engineer may, with the written consent of the contractor, use any money retained due or to become due under the contract for the purpose of paying for both labor and material for the work for which claims have been filed in the office of the supervising engineer."

The contractor was adjudged bankrupt March 7, 1927, on an involuntary petition filed February 18, 1927. At that time the city was due under the contract a sum in excess of $40,000.00. On February 7, 1927, a few days prior to the filing of the petition, the supervising engineer reported to the Baltimore public improvement commission, which had charge of the contract, that this amount was being held, and recommended that, inasmuch as releases from subcontractors had not been furnished, it continue to be withheld as a matter of protection. Nothing further was done about the matter until May 25th, after the adjudication, when, at a conference between the trustee in bankruptcy, the supervising engineer, and the commission, the engineer stated that the city would withhold payment to the trustee, in view of the claims and demands made by the subcontractors. No written consent was ever given by the contractor or its trustee in bankruptcy that the money retained by the city be paid to subcontractors or on their claims; and, as heretofore stated, it was paid into court by the city under an agreement that such payment should be without prejudice to the rights of any of the claimants.

The only question in the case, we think, is whether, by virtue of the provision of the contract which we have quoted, the subcontractors and materialmen had any lien on the funds withheld by the city. If they

did not, it is clear that they acquired no lien thereon by reason of the bankruptcy or the payment into court without prejudice. Whether such lien existed is a matter of local law, and in this case depends upon the law of Maryland. Etheridge v. Sperry, 139 U. S. 266, 276, 11 S. Ct. 565, 35 L. Ed. 171; Knapp, Stout & Co. v. McCaffrey, 177 U. S. 638, 20 S. Ct. 824, 44 L. Ed. 921; Dooley v. Pease, 180 U. S. 126, 21 S. Ct. 329, 45 L. Ed. 457; Thompson v. Fairbanks, 196 U. S. 516, 522, 25 S. Ct. 306, 49 L. Ed. 577; Humphrey v. Tatman, 198 U. S. 91, 25 S. Ct. 567, 49 L. Ed. 956; Hiscock v. Varick Bank, 206 U. S. 28, 27 S. Ct. 681, 51 L. Ed. 945; Bryant v. Swofford Bros. Dry Goods Co., 214 U. S. 279, 291, 29 S. Ct. 614, 53 L. Ed. 997; Rock Island Plow Co. v. Reardon, 222 U. S. 354, 363, 32 S. Ct. 164, 56 L. Ed. 231. And it seems clear that under the law of Maryland they had no lien. The provision of the contract under which rights are claimed by the subcontractors is a standard provision prescribed by ordinance of the city of Baltimore. It has been twice construed by the Court of Appeals of Maryland in other cases; and these decisions leave no room for any contention that subcontractors, by virtue of the provision, acquire any lien on or right in the funds withheld thereunder. Lombard Governor Co. v. Mayor & City Council of Baltimore, 121 Md. 303, 88 A. 140, 48 L. R. A. (N. S.) 678, Ann. Cas. 1915B, 865; Kellas & Co. v. Slack & Slack Co., 129 Md. 535, 99 A. 677, Ann. Cas. 1918D, 640.

In the first of these cases, funds were withheld by the city, as in this case, and subcontractors, conceding that they were not entitled to recover the amounts due them by attachment, filed a bill in equity upon the theory that the funds remaining in the hands of the city should be treated as a trust fund and subjected to the satisfaction of their claims. The Court of Appeals affirmed a decree dismissing the bill. It distinguished certain New York cases relied on by complainants and cited with approval decisions of the courts of Pennsylvania, Illinois, and the District of Columbia, quoting with approval the following language of Alvey, C. J., of the last named court, viz.

"This is an attempt by equitable garnishment to bind the money due the contractor Thomas in the hands of the municipal corporation of this District. This we think can not be done. If it could be done in this instance, it could be done in hundreds of other cases; and the consequences would be that the municipal government would constantly be liable to the obstruction and embarrassment in the administration of municipal affairs, that such claims and resulting litigation would necessarily produce. In the absence of express legislation making the municipal corporation liable to such proceedings, both reason and public policy forbid it."

In the opinion in the Lombard Governor Co. Case reference is made to an unreported decision of Judge Morris in the United States District Court for the District of Maryland, in the matter of James E. Granberry, Bankrupt (see Ann. Cas. 1915B, p. 867). It appears that in that case Granberry had entered into a construction contract with the city; that at the time of the bankruptcy a balance was due him which was claimed by his trustee and also by a subcontractor; that it was agreed that Judge Morris should adjudicate to whom the fund belonged; and that he awarded it to the trustee. This case would seem to be practically "on all fours" with the case at bar, and to be direct authority against the position of the subcontractors and materialmen. For a similar holding by the District Court for the Middle District of Pennsylvania, which state follows the same rule as is followed by Maryland, see In re H. A. Moore Co., 31 F.(2d) 321. And see, also, E. I. Du Pont De Nemours & Co. v. City of Glenwood Springs (C. C. A. 8th) 19 F.(2d) 225.

In the case of Kellas & Co. v. Slack & Slack Co., supra, the city, after withholding funds, paid the contractor the balance due him after deducting the amount due the subcontractors, delivering a voucher as payment in full which showed the deduction on account of the subcontractors. The contractor indorsed and cashed this voucher; and it was held that this constituted an appropriation of the funds withheld to the payment of the claims of subcontractors as specified in the voucher, and that they were entitled to same as against a trustee under a deed of trust for the benefit of creditors. The court made it plain, however, that in the absence of such an appropriation, which under the circumstances was obviously a written consent by the contractor to the payment of the claims of subcontractors within the meaning of the contract, the subcontractors would have had no lien upon or right to the funds, saying in this connection:

"It is generally held that a provision in a contract similar to the one under consideration does not give the sub-contractor a lien upon the money retained by the municipality, nor does it operate as an equitable assign-

ment of the fund. It was held in Grassmann v. Bonn, 30 N. J. Eq. 490, that such a provision was probably intended for the indemnity of the public authorities against suits or claims for wages or the prices of materials, which, though unmaintainable, might nevertheless be brought against them; that it would not create a lien in favor of laborers and materialmen, but was intended as a means of coercion to compel the contractors to pay their debts contracted in connection with and for the work; that the public authorities were charged with no duty towards these classes of persons, and whether they would retain the fund or not was entirely at their option; and, finally, that the provision was not an equitable assignment on the part of the contractors of so much of the fund as might be necessary to pay such debts. United States Fidelity & Guaranty Co. v. Mayor & Common Council of the City of Newark, 79 N. J. Eq. 584, 81 A. 758, 37 L. R. A. (N. S.) 575; Shannon v. Hoboken, 37 N. J. Eq. 123; Essex Freeholders v. Lindsley, 41 N. J. Eq. 189, 3 A. 391. The same principle was announced in the case of Lombard Gov. Co. v. Mayor & City Council of Baltimore, 121 Md. 303, 88 A. 140, 48 L. R. A. (N. S.) 678, Ann. Cas. 1915B, 865, and in which we held, upon grounds of public policy, that no suit at law or in equity could be maintained by a subcontractor against the city in respect to money retained by it under a provision in a contract similar to the one before us. * * * It is settled, both in this court and elsewhere, that the appellants have no lien by virtue of the provision of the contract upon the fund retained, and that the contract itself does not operate as an equitable assignment of the fund to them. * * * "

▪ The learned judge below held that the subcontractors and materialmen acquired no lien upon the funds withheld, and that the withholding thereof did not constitute an equitable assignment of any part thereof for their benefit, stating forcibly and correctly the rights of the parties under the contract, as follows:

"First, that the municipality had a right under its contract with the general contractor to withhold the funds as it did, unless and until it was satisfied that the subcontractors had been fully paid by the general contractor for the part which they had performed under the contract or had been satisfactorily secured by him. Second, that such withholding does not, however, give to the subcontractor a lien upon the money so retained, nor does it operate as an equitable

assignment of it or give them the right to maintain any suit at law or in equity against the municipality in respect to it. This proposition is clearly established as the law of Maryland by the decisions of the Court of Appeals in Lombard Governor Co. et al. v. The Mayor & City Council of Baltimore et al., 121 Md. 303, 88 A. 140, 48 L. R. A. (N. S.) 678, Ann. Cas. 1915B, 865, and the case of Kellas & Co. v. Slack & Slack Co., supra. Third, that the provision in the contract whereby the municipality is authorized to withhold the funds, is of advantage to the municipality because being a means of coercion in compelling general contractors to pay their debts to subcontractors, the latter being thus assured of being paid, are more inclined to make their bids lower. Fourth, the written consent of the general contractor to disburse any of the funds so retained is necessary before so doing, pursuant to the pertinent provisions of the contract."

But, after thus correctly stating the law relative to the rights of the parties as to the funds withheld, the learned judge fell into error, we think, in holding that the court could require the contractor, or its trustee in bankruptcy, to give consent to the payment of the fund to the subcontractors. We know of no authority for such holding; and certainly it is not warranted by anything contained in the contract. That instrument provides that the supervising engineer may "with the written consent of the contractor" use money withheld to pay off the claims of subcontractors. It is a necessary corollary of this that he may not make such use of the money withheld without such written consent. The contractor may give or refuse this consent, as he sees fit; and there is no remedy on the part either of the city or the subcontractors because of his refusal, except that the city may, if it elects to do so, refuse to pay the funds to him so long as the subcontractors remain unpaid.

▪ Some confusion in thinking results from the fact that the contractor cannot require the city to pay over to him the funds withheld, so long as the subcontractors remain unpaid, and that, if the city elects to withhold the funds, and he fails or refuses to pay the subcontractors, an impasse results. But it must be remembered that the funds so withheld remain the property of the contractor, subject only to the right of the city to withhold them. The subcontractors, as we have seen, do not acquire any lien upon or right in them by reason of their being withheld. When, therefore, the city waives this

right to withhold, as it has done in this case by payment into court, the only obstacle to the enjoyment of the right of the contractor is removed, and the funds belong to him. The subcontractors had no lien upon or right in them while they were held by the city, and it is obvious that the city could not create such lien or right by mere payment into court without prejudice.

The correctness of this conclusion will be readily seen if a case be supposed where the contractor is solvent, where the subcontractors have made demand on the city for the funds, and where the city has paid the money into court impleading the contractor and subcontractors, and asking to be relieved of liability. In such case, the subcontractors would manifestly not be entitled to the fund; for it would be money owing to the contractor upon which the subcontractors held no lien or assignment. No court would hesitate to decree that it be paid to the contractor as the person entitled thereto. The equities of the situation are in no respect changed because the contractor is bankrupt, for in such case the trustee has the right to the fund that the contractor would have had but for bankruptcy. And this seems to have been precisely what was decided by Judge Morris in the case of In the Matter of James E. Granberry, Bankrupt, to which we have made reference above.

The case may be summed up thus: At the time of the adjudication of bankruptcy, the subcontractors under the law of Maryland had no lien upon or equity in or right of priority upon the fund which they could have asserted in any court of law or equity. The fund belonged to the bankrupt, subject only to the right of the city to withhold it under the contract. When bankruptcy intervened, the rights of creditors became fixed, and the trustee took for their benefit all rights in the fund belonging to the bankrupt. When the city paid the fund into court, it waived its right to withhold same, and the trustee became unconditionally entitled thereto. The payment into court was made without prejudice to the rights of any of the contending parties; but, under the law of Maryland, the subcontractors had no rights in the fund, and payment into court could not create rights in their favor.

For the reasons stated, there was error in the decree awarding the fund to the interveners, and same will accordingly be reversed and the cause remanded to the end that decree may be entered in favor of the trustee.

Reversed.