## STICKNEY v. GENERAL ELECTRIC CO.

### In re SPEAR ENGINEERS, Inc.

### No. 3018.

Circuit Court of Appeals, Fourth Circuit.
Oct. 21, 1930.

S. M. Brandt, of Norfolk, Va., for appellant.

Braden Vandeventer, of Norfolk, Va. (Vandeventer, Eggleston & Black, of Norfolk, Va., on the brief), for appellee.

Before PARKER and NORTHCOTT, Circuit Judges, and SOPER, District Judge.

SOPER, District Judge.

General Electric Company was successful in the District Court upon its petition to recover from H. O. Stickney, trustee in bankruptcy of the estate of the Spear Engineers, Incorporated, a fund of $12,944.06. The fund had its origin in a transaction growing out of two contracts. On August 14, 1928, the Spear Engineers, Incorporated, as builder, made an agreement with the city of Portsmouth, Va., and the county of Norfolk, Va., owners and operators of Norfolk County Ferries, for the construction of a ferryboat within 300 calendar days. The contract provided amongst other things that payments should be made during the progress of the work as each 20 per cent. thereof should be completed according to certification of percentage of completion by the owner's naval architect; that the builder should keep the ferryboat clear from all claims, liens, or incumbrances of every kind and description whatsoever; and that the ferryboat, together with all fixtures, material, appliances, etc., placed thereon or delivered on the premises of the builder, should become the property of the owner, subject, however, to the builder's liens and rights under common or statute law or under the agreement.

The Spear Engineers, Incorporated, also made a contract with the General Electric Company for the purchase of certain electric propulsion motors and equipment for installation in the ferryboat. The total contract price was $28,880; and material of the value of $19,361.18 had been delivered, upon which $6,600 had been paid, leaving a balance of $12,761.18 due at the time that the fund was established. This contract contained a provision that the title to the apparatus and material should remain in General Electric Company until fully paid for in cash, and gave the company the right to retake the property in case of default in any payment by the purchaser. But the contract was not recorded in conformity with the Virginia statute regulating conditional sales, codified in section 5189 of the Code of Virginia 1924, and hence the reservation of title, while valid in other respects, was void under the terms of the statute as to creditors of the vendee who should acquire a lien upon the goods, and as to purchasers from the vendee for value without notice.

The building of the vessel was carried on during the latter part of 1928 and the early part of 1929, and two progress payments during the course of the work had been made by the owner to the builder. A third payment of $42,120, due at 60 per cent. of completion, was about to be made early in the month of May, 1929; but this stage in the progress of the work could not be said to have been reached unless there should be included in the computation of materials furnished the General Electric equipment then delivered at the yard of the builder but not yet installed upon the vessel. At this juncture, the General Electric Company, being concerned as to the debt due it by the Spear Engineers, wrote a letter under date of May 7, 1929, to the city of Portsmouth, wherein it claimed title to the electrical equipment under the reservation in its contract with the builder, and stated that there was then due it the sum of $12,761.18, with interest. It requested that the city set aside a sufficient sum to pay this debt out of the next money which should become due to the builder under the terms of the construction contract.

This letter was considered at a joint meeting of the council of the city of Portsmouth and the commissioners of the county of Norfolk, and was by them referred to the superintendent of the Ferries, and the respective law officers of the municipal corporations. The superintendent consulted the naval architect who was required, as we have seen, to certify the percentage of completion before progress payments could be made. After consideration of the matter, the city attorney of Portsmouth, by letter of May 30, 1929, advised the superintendent that the architect should either deduct the amount of the lien of General Electric Company from the progress of the work, or should use the money so that Spear Engineers could acquire title to the equipment and thereby make it pos-

sible to count the same in estimating the progress of the work. He said that the amount due the General Electric Company would have to be either paid or placed in escrow. Accordingly, the architect authorized the third progress payment to be made, provided the amount of $12,761.18 due the General Electric Company was settled therefrom. Being thus advised, the superintendent made the distribution in accordance with the following memorandum made by his bookkeeper:

Third Payment on June 1, 1929.

| | | |
|---|---|---|
| Total amount including amount due General Electric | | $42,120 00 |
| By check to Spear Engrs........ $29,175 94 | | |
| Deposited in escrow in A. N. B. to protect General Electric Company ........... $12,761 18 | | |
| And interest 3—7 to 6—1—29 .............. 182 88 | 12,944 06 | $42,120 00 |

The deposit slip for the sum of $12,944.06 in the American National Bank reads as follows:

Deposited in the American National Bank of Portsmouth, Portsmouth, Va. by Norfolk County Portsmouth Ferries,
Charles U. Freund, Supt.
Special Account
General Electric Lien
6—1—29
checks as follows: $12,761 18
182 88

$12,944 06

There was also an entry made in the ledger of the Norfolk County Ferries as follows:

"Funds out of third payment to Spear Eng. Inc. deposited in Amer. Natl. Bank, Norfolk County Ferries, Charles U. Freund, Supt., General Electric Co., June 1, 1929, $12,944.06."

The superintendent testified at the hearing that the situation at the time that the notice from General Electric Company was received was that the material did not belong to the vessel because there was a lien on it, but that he thought that the owner of the vessel had the right to install the material until it received notice of the lien. After notice was received, he made the arrangements above outlined in order that the material furnished by General Electric Company might be included in the progress of the boat and permit the third payment to be made. The sum of $12,944 was deducted because a lien was claimed against the material, and the money was placed in the hands of the owner to protect it against the claim of the lien and also incidentally for the protection of General Electric Company.

The money remained on deposit in the bank until after the bankruptcy of the Spear Engineers, when it was paid over to the trustee in bankruptcy subject to the final adjudication of the controversy. The petition in bankruptcy was filed on September 21, 1929, the adjudication took place on October 7, 1929, and the petition of General Electric Company to recover the deposit was filed on November 6, 1929. In the meantime, no other transactions took place affecting the situation; but some light is thrown by subsequent events upon the understanding between the parties at the time the fund was created. It has been pointed out that, unless the electrical material had been included in the computation of deliveries, the third payment to the builder could not have been made; and it is clear from the record that the arrangement described was made with the knowledge and consent, not only of the owner and the lien claimant, but also of the builder of the boat. The evidence showed that a few days after June 1, 1929, the president of the Spear Engineers communicated with General Electric Company and said that the deposit of the fund had been made to protect the General Electric Company and to pay two promissory notes, each for one-half of the indebtedness then overdue, and requested that one-half of the fund be used in payment of one of the notes and the balance turned over to the Spear Engineers. This suggestion was refused. Subsequently the secretary and treasurer of the Spear Engineers requested the General Electric Company to send some one to Norfolk in order to "straighten out this matter of the trust fund" so that the Spear Engineers could get at least $6,000 to help them along with the pay roll. This proposition was also refused. These officers of the bankrupt were not called to testify, and the evidence referred to was in no way contradicted, and hence it is a fair inference that they also consented to the deposit as a trust fund set up for the benefit of the General Electric Company. The participation of the bankrupt in the arrangement clearly distinguishes this case from the facts in Freeny v. Bauernschmidt (C. C. A.) 33 F.(2d) 709, cited by the appellant.

On this state of facts, the District Court, reversing the contrary conclusion of the referee, held that General Electric Company was entitled to the fund. The court said that General Electric Company had a valid lien on the apparatus as against the bankrupt, which it asserted in the letter of May 7, 1929, addressed to the owners of the boat;

and that the latter, being entitled under their contract with the builder to have the boat kept clear from all claims, liens, or incumbrances of every kind and description whatsoever, were unwilling to make the third payment to the builder, based in part upon the electrical equipment, unless the General Electric Company's bill therefor was taken care of or paid. Hence the arrangement for the deposit was made with the assent of the three interested parties for the joint protection of the Ferries and General Electric Company and indeed for the benefit of the Spear Engineers. Thereby the Ferries got rid of the adverse claim or lien of the General Electric Company; the latter got the money due it, and Spear Engineers received the third payment which otherwise the Ferries would have been unable or unwilling to make. In accordance with this arrangement, the fund was earmarked and in effect paid into the hands of the Ferries for the account of the General Electric Company which had the right thereafter at all time to receive it. In short, the District Court held that the deposit constituted a trust fund in the hands of the Ferries for the benefit of the General Electric Company.

We think that this decision of the court was essentially correct. The appellant, relying upon certain statements in the testimony of the superintendent of the Ferries, to the effect that the deposit was made for their benefit and protection, contends therefore that no trust for the benefit of the General Electric Company was created. These statements, however, are not inconsistent with the idea of a trust for the benefit of the last-named corporation, for the protection of the Ferries was assured by securing the payment of the General Electric Company's bill. Moreover, the superintendent also said that the deposit was made incidentally for the protection of General Electric Company, and the documentary evidence clearly indicates that the fund was set aside for this purpose. The facts of the case come well within the definition of equitable liens set out in the opinion of Judge Northcott in Penn Lumber Co. v. Wilson (C. C. A.) 26 F.(2d) 893, 894, where it was held:

"It is clearly the rule in the case of equitable liens that it must appear that it was the intention of the parties that certain specified property should be set aside and appropriated as security for the payment of a particular debt, that such property had actually been set aside and appropriated for this particular purpose, and that it can be clearly identified as the property the parties had in mind at the time."

Once the conclusion is reached that a valid trust was created by the joint action of the three interested parties, the remaining contentions of the appellant are not difficult to meet. It is said that, since the provisions of section 5189 of the Virginia Code were not observed, General Electric Company retained no lien on the property as against the Ferries, especially as it is conceded that the electric company made delivery with knowledge of that clause of the construction contract wherein the parties agreed that material delivered on the builder's premises should become the property of the Ferries. It is clear that the electric company's lien was not invalidated merely by reason of its failure to comply with the statute; for such failure, under the terms of the law, makes a reservation of lien void only as to creditors who acquire a lien upon the goods and as to purchasers from the vendee for value without notice. There were no creditors with liens upon the goods other than General Electric Company itself, and the only purchasers were the Ferries; but they not only had notice of the lien before they became purchasers for value, but expressly acknowledged its validity and refused to include the goods in the computation of delivered material until the deposit was made to pay for them. So far as the statute goes, the lien was certainly good, not only as between the parties to the conditional contract of sale, but also as to the Ferries themselves.

Nor does the statute help the trustee in bankruptcy. When bankruptcy proceedings are instituted, the trustee, as to property in the custody of the court, is clothed with the rights of a lienholder under section 47a of the Bankruptcy Act (11 USCA § 75(a), and takes precedence over the seller in a contract invalid under the Virginia law. Tokheim Oil Tank & Pump Co. v. Fentress (C. C. A.) 33 F.(2d) 730, 65 A. L. R. 710; Groner v. Babcock Mfg. Co. (C. C. A.) 267 F. 822; but here the seller relies primarily on the deposit made for its benefit before bankruptcy intervened, and not upon the contract of sale.

Does the provision of the construction contract for the acquisition of title by the Ferries of all material delivered to the builder's yard make the appellant's case any stronger? Under ordinary circumstances, such a contract would bind only the contracting parties, and the builder could not give any better title to the delivered goods, than

it had itself. Is the situation altered because the electric company had notice of the agreement? It is by no means certain that the electric company intended to give the Ferries a better title than it gave the builder, for, if such were the case, the express reservation of the lien in the sales contract would become meaningless. A situation might of course arise in which the seller of the goods would be estopped to assert its lien against the owner of the ship, such, for instance, as a change of position on the part of the owner to its disadvantage by payment for the delivered goods. But nothing of this sort happened in this case at bar. Before the material was installed or paid for, notice of the lien was given. After all, a decision of the point is academic only in this case, for, if it be conceded that the Ferries had title free from the lien, they nevertheless had the right under the contract to a delivery of material free from any claim or lien whatsoever, and this language is quite broad enough to include the lien which General Electric Company had upon the property in so far as the builder was concerned. It was manifestly to the interest of the Ferries to avoid controversy and possible litigation and delay at the suit of General Electric Company, and hence, even if we assume that the Ferries had an absolute title to the goods, they were clearly within their rights when they required the deposit to be made. We fail to see any impropriety in the arrangement, or any legal disability of the interested parties which could prevent its consummation.

Considering the facts in the light most unfavorable to General Electric Company, the goods belonged to the Ferries, and the third payment in its entirety to the shipbuilder, while the General Electric Company was only an unsecured creditor of the latter. If such were the case, it was entirely proper for the parties to agree to use part of the third payment to defray this indebtedness. Such a payment would be open to attack only in case it should constitute a voidable preference by an insolvent under the Bankruptcy Act; but no such point has been made or can be made on the evidence presented in this case. When the fund was deposited in trust for the benefit of General Electric Company, the shipbuilder had no further interest therein, and its trustee in bankruptcy appointed in a proceeding instituted nearly four months later has no right to include it in the bankrupt's estate.

The decision of the District Court will be affirmed.